A95A2864. PARSONS, BRINCKERHOFF, QUADE & DOUGLAS, INC. et al. v. HARDAWAY COMPANY.
(470 SE2d 904)

RUFFIN, Judge.

The Hardaway Company sued Parsons, Brinckerhoff, Quade & Douglas, Inc. and DRC Consultants, Inc. (collectively "Parsons") to recover for economic losses incurred in its construction of ten approach bridges for the Eugene Talmadge Memorial Bridge in Savannah. Hardaway alleged that Parsons negligently designed portions of the bridges and sought to recover for additional work and other expenses incurred when it had to abandon Parsons' plans. The trial

court denied Parsons' motion for summary judgment in which it alleged that the suit was not filed within the statute of limitation. We granted Parsons' application for interlocutory appeal to determine an issue of first impression: when does a cause of action accrue where parties seek recovery for economic losses incurred as a result of alleged negligent misrepresentation, a claim authorized under *Robert &c. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983). Because we find that Hardaway's cause of action accrued on the day it executed its contract with the Georgia Department of Transportation to construct the bridges, we reverse the denial of summary judgment to Parsons.

The material facts are not in dispute. In 1984, Parsons contracted with the Georgia Department of Transportation ("DOT") to perform certain design activities in relation to the construction of the bridge. On May 24, 1988, the DOT and Hardaway executed a contract for the construction of the approach bridges, and construction was scheduled to commence in the fall of 1989. According to Hardaway, when it bid the job, it intended to use the temporary support system and erection procedure depicted in Parsons' plans. However, on June 15, 1989, when the DOT informed Hardaway of a column deflection problem, Hardaway contends it was forced to abandon the sequence and installation shown in the plans. As a result, construction was delayed until February 1990, and Hardaway claimed that it incurred substantial costs.

Hardaway filed its complaint on April 8, 1993. In the complaint, Hardaway alleged that Parsons held itself out to the public and to the construction community as a professional engineering firm, able to render bridge construction design for structures such as those involved in this case in a skillful and non-negligent manner; that at the time Parsons entered into its contract with the DOT and during the development of the plans, it was aware that the design would be used by the DOT and that the plans and specifications derived therefrom would be relied on by a limited class of persons, including prospective bidders and the construction company that ultimately would be selected to perform the work; and that in preparing its bid for the project, Hardaway relied on the design and information performed and provided by Parsons. Hardaway claimed that as a result of Parsons' negligence it suffered increased damages, including but not limited to, additional costs for labor, materials, equipment, overhead, loss of profit, inefficiencies, and the wrongful imposition of liquidated damages and improper retainage by the DOT. Hardaway also sought punitive damages based on an alleged scheme between the DOT and Parsons to withhold information regarding the alleged defects.

In its sole enumeration of error, Parsons contends that in denying its motion for summary judgment, the trial court erred in failing

to find, as a matter of law, that Hardaway's complaint was barred by the applicable statute of limitation. At the outset we note that both sides agree that the four-year limitation period applicable to actions for injuries to personalty (OCGA § 9-3-31) is applicable in this case. Therefore, the only question remaining for our resolution is when Hardaway's cause of action accrued.

" '(T)he true test to determine when the cause of action accrued is "to ascertain the time when the plaintiff could first have maintained his action to a successful result[.]" A right of action has its inception from the time there has been a breach of duty; and this would entitle the party to file a suit for the breach, without regard to whether any actual damage had in fact resulted.' [Cits.]" *Shapiro v. Southern Can Co.*, 185 Ga. App. 677, 678 (365 SE2d 518) (1988), quoting *Mobley v. Murray County*, 178 Ga. 388 (173 SE 680) (1934).

Parsons contends Hardaway's cause of action accrued on May 24, 1988, the day it executed its contract with the DOT, and that the limitation period therefore expired on or about May 24, 1992. On the other hand, relying on cases involving damage to personal property or for personal injury which resulted from defective construction, Hardaway argues that its cause of action for "negligent design" accrued on June 15, 1989, the day it first used Parsons' plans and thus was injured.

Although Hardaway alleged that Parsons negligently designed portions of the approach bridges, the complaint does not state a cause of action for personal injury or injury to personal property due to defective construction. Nor does Hardaway have legal standing to maintain such a claim. Instead, the complaint demonstrates that Hardaway seeks recovery for economic losses which resulted from its reliance on Parsons' plans. See *Robert &c. Assoc.*, supra. In *Robert &c. Assoc.*, the Court held that liability for economic loss is limited to those circumstances in which a third party justifiably relies upon allegedly false information. Id. at 682. "In making a determination of whether the reliance by the third party is justifiable, we will look to the purpose for which the report or representation was made. If it can be shown that the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party can attach." Id. Parsons does not dispute that it was aware of the plans' intended use and that both prospective bidders and the company ultimately selected to perform the contract would rely on them. Nor is there any dispute that Hardaway relied on those plans in preparing its bid for the contract. Thus, under *Robert &c. Assoc.*, liability attached to Hardaway.

Parsons contends that Hardaway's right to commence an action arose on May 24, 1988, the day Hardaway executed its contract with the DOT. On that date, the allegedly false information had been sup-

plied, any justifiable reliance had taken place, and Hardaway was obligated to perform under the contract. Thus, Parsons argues, if Hardaway could not so perform due to a design error, it could first have asserted a claim against Parsons on May 24, 1988.

Since there are no Georgia cases addressing when such a cause of action accrues, we have turned to other jurisdictions for guidance. Recovery for economic losses resulting from negligent misrepresentation is not universally recognized, and only a few of the states which allow such recovery have considered the question of when the cause of action accrues. In those states where the question has been submitted for appellate review, the courts have first decided whether a claim based on negligent misrepresentation sounds in negligence or fraud. The important distinction between the two is that "[a] cause of action in negligence accrues and the statute of limitation begins to run when there is a negligent act coupled with a proximately resulting injury. [Cit.]" *U-Haul Co. &c. v. Abreu & Robeson*, 247 Ga. 565, 566 (277 SE2d 497) (1981). However, in fraud cases, the cause of action accrues from the discovery of the fraud. *Shapiro*, supra. The prevailing view is that a claim based on negligent misrepresentation sounds in negligence.

In *Duyck v. Tualatin Valley Irrigation Dist.*, 742 P2d 1176 (Or. 1987), for example, where farmers sought recovery for crop damage after relying on the water irrigation district's representations regarding the availability of water, the court held that although a claim for negligent misrepresentation involves a misrepresentation, the theory of recovery lies in negligence rather than fraud. Id. at 1181. The court acknowledged that this view is supported by the Restatement of Torts 2d, § 552 which, in setting forth the elements of negligent misrepresentation, also provided that " 'the rule stated in this Section is based upon negligence of the actor in failing to exercise reasonable care or competence in supplying [correct] information. . . .' " Id. See also *Bottrell v. American Bank*, 773 P2d 694, 705-706 (Mont. 1989) (the court recognized causes of action for negligent misrepresentation sounding in fraud and negligence under Restatement).

In *Ebrahimi v. E. F. Hutton & Co.*, 794 P2d 1015 (Colo. 1989), the court distinguished negligent misrepresentation and fraud as follows and concluded that a negligent misrepresentation claim is based in negligence: "The defendant's state of mind is irrelevant to a claim for negligent misrepresentation, except to the extent that it must be shown that the defendant failed to act reasonably in ascertaining the accuracy of the information supplied or in communicating that information. Thus, in such a case, the defendant may have had an honest intention, but simply failed to exercise reasonable care. In a fraud case, on the other hand, the gravamen of the tort is the defendant's conscious knowledge of the falsity of the representation or such reck-

lessness as amounts to a conscious indifference to the truth. Thus, the scienter element required for [fraud] significantly distinguishes that tort from any tort based upon simple negligence." (Indention omitted.) Id. at 1017. See also *Milestone Properties v. Federated Metals Corp.*, 867 SW2d 113, 118-119 (Tex. App.-Austin 1993); *Brown v. Underwriters at Lloyd's*, 332 P2d 228 (Wash. 1958).

Thus, applying principles of negligence to determine when the cause of action accrued in *Duyck*, the court did not find that the statute of limitation began to run when the crops were ultimately damaged. Rather, the court recognized that "[u]nder the Restatement (Second), the claim is complete when (1) the actor negligently 'supplies false information for the guidance' of the plaintiffs, and (2) the plaintiffs sustain 'pecuniary loss caused to them by their justifiable reliance upon the information.' This suggests that the statute of limitations on a claim for negligent misrepresentation begins to run when the plaintiffs knew or should have known that they had a loss caused by their reliance upon the defendant's information. This . . . directly tracks the elements of misrepresentation, reliance and injury. The causal nexus required by section 552 — '*loss caused to them (the plaintiffs) by their justifiable reliance upon the information*' — is *met*." (Emphasis in original.) *Duyck*, supra at 1182. See also *Hall v. Romero*, 685 P2d 757, 761 (Ariz. Ct. App. 1984) (the statute of limitation for negligent misrepresentation begins to run when plaintiff knows or should have known of the defendant's negligent conduct or when the plaintiff is first able to sue).

In *Duyck*, the water irrigation district told members in newsletters between May 1976 and May 1978 that they would receive water service on or about June 1, 1978. Although the water irrigation district's manager learned in the interim that water would not actually be available until late summer or early fall, he never informed the farmers. Relying on the water irrigation district's representations, the plaintiffs planted crops in May 1978. The plaintiffs ultimately filed their complaint for crop damage on June 18, 1980. The court held that the complaint was time-barred by Oregon's two-year statute of limitation because on June 1, 1978, plaintiffs' claim was complete: plaintiffs knew the water was not available, and they had expended money in reliance upon the water irrigation district's representations and therefore could have filed an action for damages on June 1, 1978. *Duyck*, supra at 1182-1183.

Accepting these principles, we find that Hardaway's cause of action accrued on May 24, 1988, when Hardaway executed its contract with the DOT. On that date, the "causal nexus" was met, and Hardaway " ' "could first have maintained his action to a successful result." ' " *Shapiro*, supra. See also *Hall*, supra at 762. Parsons had produced the designs upon which Hardaway relied in preparing its bid,

and Hardaway was injured when it assumed the obligation to construct the bridges based on the defective plans and specifications. Although Hardaway contends it did not know the designs were defective until June 1989, "[a]ccrual of a negligence claim does not await awareness of negligence." *Duyck,* supra at 1183. The statute of limitation on a negligence claim is not "suspended for purposes of allowing a plaintiff to develop facts to support or identify a theory of recovery or . . . to learn 'all of the facts which they might ultimately be able to advance to support their claim.' [Cit.]" Id. "Ignorance that the cause of action existed would not toll the statute." *U-Haul Co.,* supra at 567.

Hardaway also contends that it had not suffered any injury on May 24, 1988. However, as we have held in legal malpractice cases, "a right of action arises immediately upon the wrongful act having been committed, even though there are no special damages. [Cits.] . . . [I]t is not the special damage or injury resulting from the wrongful act which gives rise to a cause of action, but . . . the fact that nominal damages may be recovered is sufficient to create a cause of action and therefore result in the statute of limitation beginning to run. Even in the jurisdictions which clearly require the sustaining of damage as a triggering device for the statute of limitation, the suffering of damages to the fullest extent possible is seldom required. 'The cause of action arises, however, before the [plaintiff] sustains all, or even the greater part, of the damages occasioned by [the defendant's] negligence. [Cits.] Any appreciable harm and actual harm flowing from the . . . negligent conduct establishes a cause of action. . . .' [Cit.]" *Jankowski v. Taylor, Bishop & Lee,* 246 Ga. 804, 806 (273 SE2d 16) (1980). In this respect, the instant case may be compared with certain legal malpractice actions sharing the common essential elements, alleged professional negligence, reliance, and injury. See *Jones, Day &c. v. American Envirecycle,* 217 Ga. App. 80 (1) (456 SE2d 264) (1995) (and cases cited therein where negligent preparation of a contract alleged and the court held that the cause of action accrued upon execution of the contract).

Similarly, a cause of action for fraudulent inducement to enter into a contract accrues upon execution of the contract. In spite of the fraud element, the discovery rule is not applied. See *Kerce v. Bent Tree Corp.,* 166 Ga. App. 728 (305 SE2d 462) (1983); *Smith v. Alimenta Processing Corp.,* 197 Ga. App. 57 (397 SE2d 444) (1990); *Sears Roebuck & Co. v. Green,* 142 Ga. App. 770 (237 SE2d 10) (1977). Hardaway contends these cases bear no relation to the instant case because it had no direct contractual relationship with Parsons. However, in *Robert &c. Assoc.,* the court specifically contemplated that there would be no privity between one who supplies information and the foreseeable third party who justifiably relies. *Robert &c. Assoc.,*

supra at 681.

Although we have concluded that Hardaway failed to file its complaint within four years of the accrual of its cause of action on May 24, 1988, Hardaway argues that the denial of summary judgment was nonetheless proper because the statute of limitation was tolled due to Parsons' and the DOT's fraudulent concealment of information regarding the design defects.

"To constitute concealment of a cause of action so as to prevent the running of limitations, some trick or artifice must be employed to prevent inquiry or elude investigation, or to mislead and hinder the party who has the cause of action from obtaining information, and the acts relied on must be of an affirmative character and fraudulent. [Cit.] The fraud which will relieve the bar of the statute of limitation must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action. (Cit.)" (Punctuation omitted.) *Kerce*, supra at 729; OCGA § 9-3-96.

Before the trial court, Hardaway enumerated a litany of acts, some of which pre-dated its contract with the DOT, which purportedly demonstrated Parsons' and the DOT's knowledge of the design defects, its inquiries regarding the validity of the designs, and their deliberate attempts to conceal such information. Although that evidence reveals repeated discussions concerning the alleged defects over a significant period of time between Parsons and the DOT and that both knew about the alleged defects well in advance of June 15, 1989, when the DOT responded to Hardaway's inquiry, that evidence also reveals that Hardaway communicated only with the DOT. There is no evidence whatsoever, and Hardaway does not contend that any exists, that it made any inquiries directly to Parsons. In fact, there is no evidence of any communication between Hardaway and Parsons whatsoever. Nor has Hardaway shown that Parsons was under any duty to disclose information regarding alleged defects or that Parsons prevented it from learning about the alleged defects through other means. Thus, Parsons' actions are not of such character involving moral turpitude which prevented Hardaway from learning about the alleged defects and deterred it from filing its complaint within the statute of limitation. Accordingly, since Hardaway's complaint was not filed within four years of the date the action accrued and OCGA § 9-3-96 is inapplicable, the trial court erred in denying Parsons' motion for summary judgment.

*Judgment reversed. Beasley, C. J., and Pope, P. J., concur in the judgment only.*

DECIDED MARCH 15, 1996 —
RECONSIDERATION DENIED MARCH 29, 1996 — 

*Webb, Carlock, Copeland, Semler & Stair, Kent T. Stair, James R. Doyle II, Gregory H. Wheeler*, for appellants.
*King & Spalding, Joseph B. Haynes, Charles K. McKnight, Jr.*, for appellee.