S96G1228. HARDAWAY COMPANY v. PARSONS,
BRINCKERHOFF, QUADE & DOUGLAS, INC. et al.
(479 SE2d 727)

SEARS, Justice.

In this appeal, we must determine when a cause of action accrues in a suit brought by a general contractor seeking recovery for economic losses incurred due to alleged negligent misrepresentations made by a design engineer, with whom the contractor is not in privity. The Court of Appeals held that the cause of action accrued when the general contractor entered into a contract in partial reliance on the alleged misrepresentations. Because we hold that a negligence action of this sort accrues only when it is certain, and not speculative, that the plaintiff has suffered economic loss, we reverse.

Appellee Parsons, Brinckerhoff, Quade & Douglas, Inc. ("Parsons") contracted with the Georgia Department of Transportation ("DOT") to design the reconstruction of State Highway 19 in Savannah, including the construction of ten approach bridges for the Talmadge Memorial Bridge over the Savannah River ("the Project"). As part of its design package, Parsons planned a detailed erector system for use in erecting a number of bridge girders, each weighing approximately 50 tons, that were to be installed above a highway and warehouse district.

After DOT received the design package from Parsons, it accepted

---

[3] *Mooney v. State,* 243 Ga. 373, 388 (254 SE2d 337), cert. denied, 444 U. S. 886 (100 SC 179, 62 LE2d 116) (1979).

bids to construct the Project. Appellant Hardaway Company ("Hardaway") was the successful bidder, and in May 1988, it entered into a contract with DOT to construct the Project. No contract existed between the parties to this action — Parsons and Hardaway — rather, each party contracted with DOT; the former to design the project, and the latter to construct it.

Under Hardaway's construction plan, fabrication of the bridge girders was to begin in July 1989, and their installation was to begin in September 1989. Six months after contracting with DOT, in October 1988, Hardaway asked DOT to verify the workability of the erector system designed by Parsons. In November 1988, apparently after consulting with Parsons, DOT affirmed the integrity of the designed erector system. The record indicates that no additional representations about the erector system's workability were made to Hardaway until June 1989.

The record shows that in March 1989, Parsons began to revise its computer analysis of the erector system, and by May 1989, Parsons appears to have concluded that its designs for the erector system were flawed. On June 15, 1989, Hardaway apparently was informed that the erector system would not operate properly as designed. Hardaway claims that as a result, the fabrication of the bridge girders was delayed for approximately two months, and installation of the girders was delayed roughly six months. The uncontroverted evidence of record shows that until it learned of the alleged faults in the erector system designs on June 15, 1989, Hardaway incurred no pecuniary losses due to delays in the Project's construction. From that date onward, however, Hardaway claims it incurred economic losses due to extra work caused by delays in the fabrication and installation of the bridge girders.

On April 8, 1993, Hardaway filed suit against Parsons, alleging that Parsons' negligent design of the erector system, and its negligent misrepresentation of the system's integrity, caused Hardaway to suffer pecuniary loss.[1] In the trial court, Parsons filed a motion for summary judgment, claiming that Hardaway's cause of action was barred by the applicable four-year limitation period. Parsons argued that the statute of limitation began to run when Hardaway contracted with DOT in May 1988. In opposition, Hardaway argued that the limitation period did not commence until it began to incur economic losses in June 1989. The trial court denied Parsons' summary

---

[1] Initially, Hardaway sought extra compensation through a supplemental agreement with DOT. DOT, however, refused to enter such an agreement. Also, Hardaway and Parsons entered an agreement whereby the statute of limitation in this matter was tolled from September 30, 1992 through April 30, 1993. That agreement provided that it would not serve to revive any claim already barred as of September 30, 1992.

judgment motion.

The Court of Appeals reversed, ruling that Hardaway's cause of action accrued when it contracted with DOT in May 1988, because at that time it "could first have maintained the action to a successful result," and thus the four-year limitation period had run when Hardaway filed its complaint.[2] In reaching this conclusion, the Court of Appeals reasoned that because Hardaway had relied upon Parson's imperfect designs in preparing its bid to construct the Project, it had suffered injury from the moment it contracted with DOT in partial reliance thereon.[3]

This Court granted certiorari in order to examine when a cause of action accrues when recovery is sought for economic loss resulting from alleged tortious negligent misrepresentation. As explained below, we find that the Court of Appeals misapprehended the essential requirement that in order to maintain its action, Hardaway must have suffered economic loss, and that until actual economic losses were incurred with certainty, and not merely as a matter of speculation, Hardaway's claim did not accrue, and the limitation period did not commence.

1. Hardaway's cause of action was first recognized by this Court in *Robert &c. Assoc. v. Rhodes-Haverty Partnership*,[4] and was adopted from the Restatement (Second) of Torts, § 522. Its essential elements are: (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.[5]

The parties both assert that the four-year limitation period for actions claiming injury to personalty, set forth in OCGA § 9-3-31, is applicable to this matter. In light of the relevant case law applying that Code section, we agree with that assertion.[6] Accordingly, we must determine whether Hardaway's cause of action accrued before or after April 8, 1989, four years before it filed its complaint.

Parsons urges us to affirm the Court of Appeals' ruling that Hardaway's cause of action accrued in May 1988, when it contracted with DOT to construct the Project based upon Parson's allegedly deficient designs, because at that time, Hardaway could have successfully maintained an action. At that time, Parsons argues, Hardaway (1) had been provided with the allegedly defective erector system

---

[2] *Parsons, Brinckerhoff, Quade & Douglas, Inc. v. Hardaway Co.*, 221 Ga. App. 74, 78 (470 SE2d 904) (1996).

[3] Id., 221 Ga. App. at 79.

[4] 250 Ga. 680 (300 SE2d 503) (1983).

[5] Id., 250 Ga. at 681-682.

[6] See *U-Haul Co. v. Abreu & Robeson, Inc.*, 247 Ga. 565, 567 (277 SE2d 497) (1981); *Hunt v. Star Photo Finishing Co.*, 115 Ga. App. 1 (153 SE2d 602) (1967).

plans; (2) had relied on those plans to its detriment in preparing its bid; and (3) had suffered pecuniary loss by contracting itself to build the Project for a payment price it claims was too low, given the error in the plans. With regard to this last element, Parsons argues that the economic losses that Hardaway claims it sustained were the same on the day it signed the contract as on the day it learned the Project would be delayed due to the faulty erector system.

In making this argument, Parson focuses on the third requirement of Hardaway's claim for economic loss due to negligent misrepresentation — "pecuniary loss caused by . . . justifiable reliance upon the [false] information" supplied by a defendant.[7] Parsons urges us to construe this requirement to include "*speculative* pecuniary loss" caused by negligent misrepresentation. For the reasons explained below, we reject Parsons' argument.

With the benefit of hindsight, we can see now that at the time Hardaway signed the contract, it may have been *foreseeable*, or even *likely*, that it would lose money due to delays caused by apparent errors in the initial designs. However, the uncontroverted evidence shows that it did not suffer *actual* "pecuniary loss" due to flawed designs until it was certain that the Project would not commence as scheduled.[8] A plain reading of the essential elements underlying Hardaway's cause of action shows that in order to file a legitimate claim, it had to show actual economic loss proximately resulting from Parsons' negligent misrepresentation.[9]

Indeed, until it suffered economic loss, Hardaway did not even *have* a claim for negligent misrepresentation, and we think it palpably obvious that in order for the prescriptive period to commence, the plaintiff must be able to state a cause of action. In this case, that required the negligent provision of false information, detrimental reliance, and *resulting economic loss*. Because the resulting loss must necessarily occur after the negligent act and reliance thereon, the statute of limitation runs from that point. Thus, until economic loss actually was sustained by Hardaway, it did not have a cause of action against Parsons, and the prescriptive period did not begin to run.

Furthermore, this result is more consistent with the general rule set forth in the case law that the four-year limitation period of OCGA § 9-3-31 does not begin to run until actual injury occurs.[10] Insofar as

---

[7] See *Robert &c. Assoc.*, 250 Ga. at 681, n. 1; Restatement (Second) of Torts, § 522 (1) (1977).

[8] Even if there were some evidence put forth by Parsons that Hardaway suffered actual economic loss before June 15, 1989, at most this would have created an unresolved issue of fact, making summary judgment in favor of Parsons on statute of limitation ground inappropriate.

[9] See note 5, supra, and accompanying text.

[10] See *U-Haul Co.*, supra.

the injury complained of in a claim for negligent misrepresentation brought under *Robert &c. Assoc.* is economic loss, the prescriptive period set forth in that statute cannot commence until such loss is sustained with certainty. Moreover, as recognized by the Court of Appeals, it is generally recognized that the true test to determine when a cause of action accrues is to ascertain the time when the plaintiff first could have maintained his action to a successful result.[11] As stated above, Hardaway could not successfully maintain its action until it *had* an action, and that required definite economic loss.

Thus, we disagree with Parson's assertion, and the Court of Appeals' conclusion, that Hardaway first could have brought its claim for negligent misrepresentation when it contracted with DOT in May 1988. Rather, in a claim for economic injury sustained due to reliance upon false information negligently provided by a defendant, the statute of limitation begins to run when the plaintiff suffers pecuniary loss with certainty, and not as a matter of pure speculation.[12]

Finally, we believe that once public policy considerations are taken into account, this can be the only just result. Implicit in Parsons' argument that the limitation period commenced upon the signing of the contract is the assumption that Hardaway was somehow obligated to make its own evaluation of Parsons' specifications in order to determine whether they were in fact reliable and would work as planned.[13] In order to conduct such an evaluation, Hardaway would be required to employ the services of an independent engineering and design firm. The additional cost of such an independent evaluation, sure to be substantial, would necessarily be a consideration in bid preparations and factor into the final price paid under the contract. Because this particular matter involves a public contract, the additional cost required to conduct an independent evaluation would eventually be borne by the taxpayers of this state. We decline to endorse, even by implication, such a wasteful approach to public spending.

Because Hardaway's suit was filed well within four years of the

---

[11] *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 805 (273 SE2d 16) (1980).

[12] We note that this conclusion is in accordance with the rulings of other courts that previously have addressed this issue. See, e.g., *MBA Constr. Co. v. Roy J. Hannaford Co.*, 818 P2d 469 (Okla. 1991). See also *Farrell Constr. Co. v. Parish*, 693 FSupp. 490 (E.D. La. 1988); *Cubito v. Kreisberg*, 419 NYS2d 578 (1979), aff'd, 415 NE2d 979 (N.Y. 1980).

[13] This assumption necessarily underlies Parsons' argument, because otherwise, it would be unlikely that Hardaway would have knowledge of any flaws in Parson's designs until it began to rely thereon during the actual construction of the Project. But see *Metlife v. Wright*, 220 Ga. App. 827 (470 SE2d 717) (1996) (ignorance of facts constituting a cause of action does not toll running of the statute of limitation).

date it sustained economic loss due to the Project's delay, it was timely. The contrary ruling by the Court of Appeals is reversed.

2. Because of our ruling in Division 1, we need not address Hardaway's contention that the statute of limitation was tolled by fraudulent concealment.

*Judgment reversed. All the Justices concur.*

DECIDED JANUARY 21, 1997.

*King & Spalding, Joseph B. Haynes, Charles K. McKnight, Jr.,* for appellant.

*Webb, Carlock, Copeland, Semler & Stair, Kent T. Stair, Gregory H. Wheeler,* for appellees.