**L. Mitchell COFFEE, Jr. and Lmc Motors, Inc., Plaintiffs,**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant.**

No. CV–396–019.

United States District Court, S.D. Georgia, Dublin Division.

Dec. 16, 1998.

Donald Walker Gillis, Dublin, Joseph J. Burton, Jr., M. Susan Taylor, Burton & Anderson, LLP, Rosemary S. Armstrong, Atlanta, GA, for L. Mitchell Coffee, Jr., Lmc Motors, Inc. plaintiffs.

Dwight J. Davis, Barry Goheen, King & Spalding, Atlanta, Hugh B. McNatt, McNatt, Greene & Thompson, Vidalia, M. Graham Loomis, King & Spalding, Atlanta, GA, for General Motors Acceptance Corporation, defendant.

## ORDER

BOWEN, Chief Judge.

In the above-captioned case, Defendant has filed a Motion for Partial Summary Judgment on Plaintiffs' fraud and negligent misrepresentation claims. Upon consideration of the briefs submitted by counsel, Defendant's Motion for Partial Summary Judgment on Plaintiffs' fraud and negligent misrepresentation claims is hereby GRANTED for the reasons set forth below.

## I. BACKGROUND

This case arises out of an inventory financing arrangement between Plaintiff LMC Motors, Inc. (LMC), which operated a General Motors (GM) dealership in Eastman, Georgia, and Defendant General Motors Acceptance Corporation (GMAC), a wholly owned subsidiary of GM. Plaintiff L. Mitchell Coffee, Jr. (Coffee) is the president and sole shareholder of LMC. Coffee first became involved in the automobile business during the late 1980s, when he acquired 49% of the stock in Hilliard, Inc., which at the time operated the GM dealership in Eastman. Coffee made this investment at the request of his friend Zack Hilliard, the dealership's owner. Coffee purchased the remaining stock from Mr. Hilliard in August 1989, and in December of that year GM approved Coffee as a dealer. Coffee operated the dealership under its former name until December 1990, when he changed the corporation's name to LMC Motors, Inc.[1]

---

1. The parties generally refer to the corporate entity as LMC despite the fact that its name was not formally changed until December 1990.

Hilliard, Inc. had previously entered into an inventory financing arrangement with GMAC—sometimes referred to as a "floor plan" financing arrangement—which the parties continued following Coffee's acquisition of the dealership. In this type of arrangement, the lender (GMAC) provides a line of credit to the dealership (Hilliard/LMC), which the dealership uses to finance the purchase of vehicles from the manufacturer (GM). On December 27, 1990, Coffee executed several agreements on behalf of LMC in connection with this inventory financing arrangement: (1) a Promissory Note, (2) a Loan Agreement, (3) a Wholesale Security Agreement, (4) an Amendment to the Wholesale Security Agreement, (5) a Guaranty Agreement, and (6) a Security Agreement.[2] In general terms, GMAC extended a $1.5 million line of credit to LMC, which the parties agree was intended to permit LMC to finance up to eighty vehicles. GMAC, however, frequently adjusted the number of vehicles it would finance—and hence the amount it would advance on LMC's behalf—based upon a sixty-day supply of vehicles. That is, GMAC would allow LMC to purchase only the number of vehicles that the dealership was likely to sell in a two-month period. According to GMAC, this "sixty-day-supply" rule is standard company policy and is also an accepted guideline within the automobile industry.

Plaintiffs detail several instances in which they allege that GMAC restricted and adjusted LMC's credit limit.[3] While GMAC contests some of these allegations, it admits that it "periodically adjusted LMC's credit limit based on LMC's sales rate and other financial criteria, such as liquidity and capitalization." (Def.'s Am. Brief in Support of its Mot. for Summ. J. at 4). Furthermore, GMAC admits that it "suspended"[4] LMC's line of credit on two different occasions: once from February to September 1990, and again from March to July 1993. According to GMAC, the 1990 suspension was initiated at Coffee's request after it was discovered that LMC had $650,000.00 in previously undisclosed off-balance sheet debt;[5] according to Plaintiffs, however, GMAC refused to "reinstate" the line of credit until Coffee made an additional $100,000.00 capital contribution to LMC. The 1993 suspension, on the other hand, was initiated by GMAC because a check from LMC to GMAC had been returned for insufficient funds.[6] GMAC conditioned reinstatement of the credit line upon satisfaction of several financial criteria, including an additional capital contribution by Coffee.

On April 5, 1994, GMAC advised LMC that it intended to terminate their inventory financing arrangement and that it would make a formal demand for payment in ninety days. Therefore, on July 5, 1994, GMAC demanded

---

**2.** Plaintiffs assert that the December 1990 agreements are identical to ones executed by Coffee on behalf of Hilliard, Inc. in December 1989, and that the 1990 agreements were executed simply to reflect the change in the corporation's name. (Pls.' Statement of Undisputed Facts ¶ 1). GMAC, however, contends that it has been unable to locate copies of the alleged 1989 agreements and that the Plaintiffs have not produced them. Thus, GMAC purports to dispute Plaintiffs' assertion that the 1989 and 1990 agreements are identical. (Def.'s Resp. to Pls.' Statement of Undisputed Facts ¶ 1).

At oral argument, however, counsel for GMAC seemed to concede Plaintiffs' contentions regarding the 1989 agreements:

[Coffee] signed these very contracts with [GMAC] in August of 1989. And immediately [GMAC] said these are the number of cars that we will finance for you and you have to meet these conditions as we go along. That was in August of 1989. We go through all of the rest of 1989 to 1990 and then in 1990 *he signed the exact same agreements again.*

(Tr. at 26) (emphasis supplied). Therefore, for purposes of this Order, I will deem it admitted that the 1989 agreements are identical in all material respects to the December 1990 agreements that are presently in the Record.

**3.** The specific credit fluctuations are detailed later in this Order.

**4.** Although the parties refer to these instances as "suspensions" of LMC's line of credit, it appears that LMC nevertheless was permitted to purchase vehicles during these periods, albeit on a restricted and closely monitored basis.

**5.** The debt had been incurred prior to Coffee's purchase of the corporation.

**6.** According to the Plaintiffs, this overdraft was the result of a clerical error and a miscommunication within the bank. GMAC disputes this assertion; however, GMAC does not dispute that LMC promptly forwarded certified funds in satisfaction of its payment obligations.

payment of the principal amount outstanding on the line of credit, plus the accrued interest on that amount.[7] At about the same time, Coffee entered into negotiations with two individuals—Frank Andrews and Woody Butts—regarding their potential investment in LMC. Andrews, Butts, and Coffee subsequently formed ABC Motors in July 1994, and ABC Motors in turn executed an asset purchase agreement with LMC. GMAC currently provides floor plan financing to ABC Motors.

It is undisputed and notable that LMC timely paid all amounts owed to GMAC under the terms of the agreement. It also is undisputed that LMC incurred substantial operating losses during its existence.[8] Plaintiffs allege that LMC's losses were precipitated by GMAC's repeated and unjustified reductions in LMC's credit limit and by GMAC's consequent refusal to finance the purchase of new vehicles at certain critical times.[9] GMAC, on the other hand, attributes LMC's losses to poor management, and it further claims that it was justified—and in fact authorized under the agreement—in adjusting LMC's credit limit and in terminating their financing relationship.

Plaintiffs commenced the instant lawsuit in March 1996, asserting no less than eight claims against GMAC: (1) violation of the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221 et seq.; (2) violation of the Georgia Motor Vehicle Franchise Practices Act, O.C.G.A. § 10–1–620 et seq.; (3) breach of contract; (4) promissory estoppel; (5) fraud; (6) negligent misrepresentation; (7) tortious interference with business relations; and (8) tortious interference with contractual relations. GMAC filed a Motion for Summary Judgment on all of Plaintiffs' claims, and Plaintiffs sought summary judgment on

the sole issue of GMAC's liability for breach of contract.

In this Court's May 19, 1998 Order, several claims against GMAC were dismissed. Accordingly, only Plaintiffs' following claims remain prior to this Motion for Partial Summary Judgment: (1) violation of the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221 et seq.; (2) breach of contract; (3) fraud; and (4) negligent misrepresentation. During a telephonic conference on July 6, 1998, the Court granted Defendant permission to file a Motion for Partial Summary Judgment addressing whether Plaintiffs' claims of fraud and negligent misrepresentation were barred by the statute of limitations. This Motion is currently before the court.

## II. REQUIREMENTS FOR SUMMARY JUDGMENT

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991). When the moving party has the burden of proof at trial, that party must carry the burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case ..., no reasonable jury could find for the non-moving party." United States v. Four Parcels of Real Prop-

---

7. According to GMAC's demand letter, the amount of principal outstanding was $1,303,-739.16, which represented the amount advanced for the purchase of 77 vehicles. (Pls.' Statement of Undisputed Facts, Ex. 35).

8. Plaintiffs purportedly dispute GMAC's assertions that LMC never generated a net annual profit and that it accumulated over $870,000.00 in net losses during its existence. (Pls.' Resp. to Def.'s Statement of Undisputed Material Facts ¶ 9). However, Plaintiffs do not refer the Court

to any contrary evidence, nor do they assert that LMC actually operated at a profit. For purposes of this Order, therefore, I will construe Plaintiffs' statement as disputing (1) GMAC's assertion that LMC never generated a net annual profit and (2) the amount of LMC's accumulated losses.

9. For example, Plaintiffs claim that LMC's credit limit was reduced at a time of year when dealers are required to submit "preference orders" to the manufacturer in order to secure the most desirable models.

*erty,* 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry the burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet the burden of proof at trial, *see Clark,* 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet the burden at trial is *not* sufficient, *Clark,* 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes,* 398 U.S. at 157, 90 S.Ct. 1598.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. The non-moving party cannot carry the burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. 2505.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried the burden as set forth above. *See Clark,* 929 F.2d at 609 n. 9.

## III. ANALYSIS

Defendant has moved for partial summary judgment on Plaintiffs' fraud and negligent misrepresentation claims. Specifically, Defendant contends that these claims are barred by the statute of limitations. Plaintiffs' claims for fraud and negligent misrepresentation are identical and allege that at the time the parties entered into the inventory financing arrangement, GMAC represented that it would advance funds up to the maximum amount available under the line of credit and that GMAC did not intend to honor those representations. Plaintiffs further elaborate that "GMAC made repeated representations that upon Mr. Coffee's infusing additional capital into LMC, GMAC would provide it with a floor plan sufficient in size to allow LMC to be profitable. Those representations were made with either the present intent not to perform or with knowledge that such performance was not possible." (Def.'s Brief in Support of its Mot. for Part. Summ. J. at 2). The statute of limitations for fraud, including fraudulent inducement and negligent misrepresentation claims, is four years. O.C.G.A. § 9–3–31. Both parties agree that a four-year statute of limitations is appropriate but dispute the date when the limitations period began to run. Plaintiffs' claims for fraudulent inducement and negligent misrepresentation are analyzed below.

### A. *Fraudulent Inducement*

■ Defendant contends that the statute of limitations for the fraudulent inducement claim began to run when the contract forming the basis of that claim was executed. Fraudulent inducement in the execution of a contract accrues on the date of the execution of the contract. *Kerce v. Bent Tree Corp.,* 166 Ga.App. 728, 729, 305 S.E.2d 462 (1983). The loan documents were executed on December 27, 1990, and Plaintiffs filed suit on March 29, 1996. Under the four-year statute of limitations for fraud, Plaintiffs' claims are barred.

Plaintiffs contend, however, that Defendant's actual fraud tolled the statute of limitations. "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." O.C.G.A. § 9–3–96. The limitation period may be tolled if the defendant commits an act of actual fraud. Actual fraud must have the "effect of concealing from the plaintiff the existence of the cause of action despite her exercise of reasonable diligence." *Hahne v. Wylly,* 199 Ga.App. 811, 812, 406 S.E.2d 94 (1991). Actual fraud involves moral turpitude and requires an intentional deception by false representation or by concealment of a fact which "has the effect of debarring and deterring the plaintiff from his action." *Shipman v. Horizon Corp.,* 245 Ga. 808, 808, 267 S.E.2d 244 (1980). Plaintiffs contend that Defendant committed actual fraud when it knowingly entered into the financing contract without intending to honor its terms.

Even assuming that Plaintiffs have provided evidence sufficient to demonstrate actual fraud involving moral turpitude, the statute of limitations began to run as soon as Plaintiffs should have discovered Defendant's fraud. "When actual fraud is the gravamen of the underlying action, no independent fraud is required for tolling of the statute of limitation, and the limitation period is tolled until the plaintiff discovers or in the exercise of reasonable diligence should have discovered the fraud." *Hahne,* 199 Ga.App. at 812, 406 S.E.2d 94. "A plaintiff has a duty to exercise diligence to discover the fraud in order to toll the statute; mere ignorance of the fraud is not sufficient." *McLendon v. Georgia Kaolin Co., Inc.,* 782 F.Supp. 1548, 1566 (M.D.Ga.1992); *see also Stricker v. Epstein,* 213 Ga.App. 226, 229, 444 S.E.2d 91 (1994) (refusing to toll the statute of limitations when plaintiffs should have realized that something was wrong when they stopped receiving their monthly checks and could have examined the corporation's books to see how their money was being used).

In this case, Plaintiffs' allegations concern whether Defendant was required to extend a fixed line of credit rather than an amount that varied with the car dealership's operations. The evidence demonstrates that Defendant limited LMC's credit as follows:

1. February 1990—Reduced to 65 vehicles.
2. April 1990—Reduced to 60 vehicles.
3. July 1990—Reduced to 35 vehicles.
4. September 1990—Increased to 75 vehicles following $100,000.00 capital contribution by Coffee.
5. April 1991—Reduced to 55 vehicles.
6. May 1991—Reduced to 50 vehicles.
7. August 1991—Reduced to 30 vehicles.
8. February 1992—Increased to 35 vehicles following $25,000.00 capital contribution by Coffee.
9. February 1993—Reduced to 25 vehicles, but with temporary (90–day) increase to 35 vehicles.
10. March 1993—Credit suspended except for "sold orders."
11. July 1993—Credit reinstated following $30,000 capital contribution by Coffee; limit set at 45 vehicles (30 new, 15 factory auction).
12. July 1994—Financing arrangement terminated.

Defendant's frequent reduction of the credit limit should have put Plaintiffs on notice that Defendant did not allegedly intend to honor a fixed credit limit. Plaintiffs had actual or at least constructive knowledge that something was wrong when Defendant continually reduced the amount of credit Plaintiffs requested. Certainly, if Plaintiffs exercised due diligence, they would have discovered the fraud they allege—that Defendant did not intend to fulfill the credit limit Plaintiffs believed they were entitled to. In fact, Defendant lowered the credit limit three times in the first year of the contract. Plaintiffs' fraudulent inducement claim would still be barred by the statute of limitations even if the statute did not begin to run until Defendant's sixth reduction of the credit limit in August of 1991. Thus, the statute of limitations bars Plaintiffs' fraudulent misrepresentation claim.

*B. Negligent Misrepresentation*

Defendant also contends that Plaintiffs' claim for negligent misrepresentation is barred by the four-year statute of limitations.

A cause of action for negligent misrepresentation accrues when the plaintiff suffers some definite economic loss. *Hardaway v. Parsons, Brinckerhoff, Quade & Douglas, Inc.,* 267 Ga. 424, 427, 479 S.E.2d 727 (1997). This loss must be with some certainty, not just speculative loss. *Id.* at 428, 479 S.E.2d 727. "[T]he true test to determine when a cause of action accrues is to ascertain the time when the plaintiff first could have maintained his action to a successful result." *Id.*

■■ Plaintiffs contend that actual injury occurred in the summer of 1994 when LMC's line of credit was terminated. Plaintiffs further contend that Mr. Coffee's infusions of capital and Defendant's reductions in the credit limit were insufficient actual injuries because Plaintiffs did not lose their entire investment. It is unnecessary, however, for Plaintiffs to have experienced their *entire* injury for an actual injury to occur. In this case, it is sufficient that Plaintiffs suffered a definite economic loss when they were required to invest extra amounts of capital into the car dealership in order to receive the credit they claim they were fraudulently denied. Further, Plaintiffs contend that the operating losses the car dealership suffered were a direct result of Defendant's refusal to honor a fixed credit limit. These operating losses, many of which occurred more than four years before this case was filed, are also sufficient injuries to begin the statute of limitations period. Plaintiffs could have brought a claim against Defendant alleging the same claims that this case presents more than four years before the case was filed; the amount of monetary damages would be the only difference.

Because the claim for negligent misrepresentation accrued when Defendants required additional capital to be invested into the deal-ership or when Plaintiffs suffered operating losses caused by the reduction of the credit limit, the four-year statute of limitations bars Plaintiffs' negligent misrepresentation claim.

### C. Continuing Tort

Plaintiffs also contend that Defendants have committed a continuing fraud that occurred throughout the entire course of the relationship between the parties. As such, Plaintiffs argue that the statute of limitations does not bar its claims. "Georgia courts have consistently held that in a continuing tort a cause of action accrues when a plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof." *Waters v. Rosenbloom,* 268 Ga. 482, 482, 490 S.E.2d 73 (1997).

Even assuming that Plaintiffs are entitled to use the continuing tort theory to extend the statute of limitations, the statute of limitations still bars Plaintiffs' fraudulent inducement and negligent misrepresentation claims. As discussed above, because Plaintiffs should have discovered both the actual injury and its cause in September of 1990, Plaintiffs' fraudulent inducement and negligent misrepresentation claims were not timely filed under the four-year statute of limitations.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment is GRANTED. Plaintiffs' remaining claims for (1) violation of the Automobile Dealers' Day in Court Act and (2) breach of contract shall proceed to trial accordingly.