## A05A0737. JOHNSTON v. CORREALE.
(612 SE2d 829)

BLACKBURN, Presiding Judge.

In this dispute centering on an unfulfilled contract to renovate a home, Debra Johnston appeals the trial court's grant of a directed verdict in favor of Scott Correale, her ex-boyfriend, contending that the trial court erred because: (1) some evidence supported her contentions that Correale breached a contract of agency with her after allegedly agreeing to locate an experienced contractor and negotiate a renovation contract on her behalf; (2) some evidence showed that Correale defrauded her by intentionally misrepresenting Greg Burkey's experience and qualifications contrary to his duties as her agent; (3) some evidence existed that Correale negligently misrepresented Burkey's abilities to Johnston to her detriment; and (4) Johnston should not have been prevented from questioning Correale at trial regarding his knowledge of Burkey's past criminal history. For the reasons set forth below, we affirm.

> A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.

(Citation omitted.) *Nunley v. Nunley*.[1] See also OCGA § 9-11-50 (a).

Construed in the light most favorable to Johnston, the record shows that, before meeting Correale, Johnston had decided that she would like to renovate her home, and she consulted with an architect and received bids from two separate contractors on the project. Thereafter, on the recommendation of a mutual acquaintance, Johnston and Correale began dating in September 1997. Correale quickly became interested in Johnston's renovation plans, and he highly recommended Burkey to her as a possible builder. At the time of this recommendation, Burkey was living with Correale, an old friend. Johnston testified that Correale was not forthcoming about his relationship with Burkey, and she did not become aware of the relationship until the day that she signed the contract with Burkey, despite the fact that she spent the night at Correale's home on several occasions.

---

[1] *Nunley v. Nunley*, 248 Ga. App. 208 (546 SE2d 330) (2001).

As Johnston planned for her renovation, Correale assisted her in several ways, including: (1) taking her to stores in late September to pick out tile for the floors as well as a possible bathtub; (2) drawing up a spread sheet to set out the estimated cost of materials needed to complete the renovation; (3) typing up the renovation contract that Johnston eventually signed with Burkey; (4) taking Johnston to see a house he was having built for himself by a builder other than Burkey; and (5) orchestrating negotiations between Johnston and Burkey by setting up meetings and conference calls.

Prior to signing the contract with Burkey, Johnston requested a list of references for Burkey's work from both Correale and Burkey, but she never received them. In addition, she inquired about insurance coverage and necessary permits, but she did not receive information on these questions either. She testified that Correale assured her that Burkey would have crews at the ready and that the necessary permits would be issued. She further testified, however, that she did nothing to determine the accuracy of these statements.

Nevertheless, without references or any other information, Johnston voluntarily chose to pay Burkey $52,500 to begin renovation on her house on October 10, 1997, and she executed a contract with Burkey on October 28, 1997, 18 days later. Shortly after Johnston made the first payment to Burkey, he paid Correale a $5,000 referral fee. Correale did not tell Johnston about this payment. Johnston admits that she made no independent efforts prior to signing the contract to determine Burkey's qualifications for the job.

A few weeks after the renovation work commenced, Johnston and Burkey began to disagree on the quality of the work and the related expenses, ultimately reaching an impasse. A short time after this disagreement, Johnston and Correale broke off their intimate relationship, and Correale eventually stopped assisting Johnston with her renovation plans.

Johnston later filed suit against Burkey, who is not a party to this appeal, and she subsequently received a default judgment against him. After suing Burkey, Johnston decided to amend her complaint to add Correale as a defendant. Johnston's case against Correale proceeded to a jury trial, and, at the end of Johnston's case in chief, the trial court granted Correale's motion for a directed verdict on all of Johnston's claims. Because Johnston failed to provide any evidence that Correale had agreed to be her agent or that she justifiably relied on any information imparted by Correale, the trial court properly granted the directed verdict.

1. Johnston contends that the trial court erred by determining that Correale was entitled to a directed verdict on her claim that he breached a contract of agency with her, whereby he had agreed to locate an experienced contractor and negotiate a renovation contract

on her behalf. The evidence, however, shows only that Correale was acting as Johnston's boyfriend and companion, not as an agent under contractual obligations.

During her testimony, Johnston was asked whether she had any sort of paperwork which would indicate whether Correale had agreed to take on any responsibilities regarding her contract with Burkey as her agent. Johnston responded that: "I wouldn't be documenting that *because we were in a relationship.*" (Emphasis supplied.) Accordingly, Johnston admitted that she considered her interaction with Correale regarding the renovation as growing out of their personal relationship, not a contractual business arrangement which would give rise to an agency. "Contracts of agency, to be cognizable in law, must, like other agreements, have reference to the assumption of legal rights and duties, as opposed to engagements of a mere civic or social character, or of such other nature as to exclude monetary values." *Huckeby v. Smith.*[2]

Furthermore, the record supports only the conclusion that Correale merely acted to facilitate the negotiations between Johnston and Burkey, not to make decisions for her. In fact, the record shows that Johnston, of her own accord, stopped work on the project at least twice in order to alter the design of the construction. In making this decision, she did not rely on advice or representations from Correale. To the contrary, these decisions indicate that Johnston knew that she was in control of the project. No evidence supports a contrary conclusion.

For this reason, the trial court did not err by granting Correale's motion for a directed verdict regarding Correale's alleged agency.

2. Johnston contends that the trial court erred by granting Correale's motion for a directed verdict regarding her claim that Correale defrauded her by intentionally misrepresenting Burkey's experience. "The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Punctuation omitted.) *Stiefel v. Shick.*[3] Even assuming that Johnston can prove the other four elements of her fraud claim, she cannot show that she justifiably relied on the information that she received from Correale.

When asked why she signed the contract without doing any independent research of Burkey's qualifications, Johnston testified that Correale exerted a controlling influence over her "by assuring [her] that [Burkey] was a general contractor and that [Correale] could

---

[2] *Huckeby v. Smith*, 42 Ga. App. 719, 725 (157 SE 234) (1931).
[3] *Stiefel v. Shick*, 260 Ga. 638, 639 (1) (398 SE2d 194) (1990).

help her pick out the materials that would be needed in order to create the contract." Correale's assurances, however, in no way forced Johnston to contract with Burkey, as she explicitly testified that she was legally and mentally capable of handling her own affairs at the time that she entered the contract. In fact, prior to receiving any input from Correale or Burkey, Johnston had already shown her proficiency by interviewing architects and contractors.

Thus, the record supports only the conclusion that, at the time of the contract in issue, Johnston was fully capable of doing independent research of Burkey. She simply chose not to do so on the recommendations of her boyfriend. "In the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations[;] failure to do [so] will bar an action based on fraud." (Punctuation omitted.) *Nicholson v. Harris.*[4] In this case, she has not shown that she exercised reasonable diligence in determining Burkey's qualifications or that she justifiably relied on any representations made by Correale. Therefore, the trial court did not err by granting Correale's motion for a directed verdict on the fraud count.

3. Johnston contends that the trial court erred by granting Correale's motion for a directed verdict regarding her claim that Correale, as Johnston's agent, negligently misrepresented Burkey's abilities. Specifically, Johnston testified that Correale made the following misrepresentations to her: (1) Burkey was a general contractor who was capable of completing the renovation; (2) Burkey had work crews, appropriate insurance, and references; (3) Burkey could obtain necessary permits.

The elements necessary to prove negligent misrepresentation are "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Hardaway Co. v. Parsons &c., Inc.*[5] As we have previously determined in Division 1, supra, that Correale was not Johnston's agent and that Johnston did not justifiably rely on Correale's alleged misrepresentations in Division 2, supra, this contention lacks merit. Id.

As the trial court stated prior to making its determination, Johnston simply has not supported her legal claims in this case, although the facts may nonetheless make Correale's actions seem unsavory at best.

---

[4] *Nicholson v. Harris,* 179 Ga. App. 35, 37 (3) (345 SE2d 63) (1986).

[5] *Hardaway Co. v. Parsons &c., Inc.,* 267 Ga. 424, 426 (1) (479 SE2d 727) (1997).

4. Since we have determined that the trial court did not err by granting Correale's motion for a directed verdict, we need not reach Johnston's remaining enumeration of error.

*Judgment affirmed. Miller and Bernes, JJ., concur.*

DECIDED MARCH 25, 2005 —

*Davis, Matthews & Quigley, Ron L. Quigley*, for appellant.
*Sutherland, Asbill & Brennan, Lori J. Christman, Louis Levenson*, for appellee.