43784, 43786. KAUKA FARMS, INC. v. SCOTT et al.;
and vice versa.
(352 SE2d 373)

CLARKE, Presiding Justice.

Appellees, owners of a 2400-acre farm in Thomas County known as River Creek Plantation, sold the property to Kauka Farms. T. T. Scott, one of the owners, reserved a life estate in 20 acres immediately surrounding his home. The boundaries of this 20-acre reservation have never been defined. Since the closing of the sale, Scott has continued to live in his home, use water from a well on the property, and

make use of a separate gardener's cottage.

T. T. Scott, Kerrigan Scott and Pamela McChesney (appellees) filed a complaint against Kauka Farms (appellant) to recover on the attorney fees provisions of a promissory note executed by Kauka Farms and alleging various breaches of contract by Kauka Farms arising out of the purchase of the River Creek Plantation by Kauka Farms. This suit was styled *Kauka Farms, Inc. v. Scott.* Appellees sought injunctive relief and damages. Kauka Farms denied liability and counterclaimed against Scott seeking, among other things, a declaration that a portion of the life estate reserved by Scott is invalid for indefiniteness and an injunction against Scott's asserting it.

Kauka Farms moved for partial summary judgment on appellees' complaint and on the counterclaim. Both sides also sought interlocutory injunctions dealing with Scott's purported life estate in 20 acres of the land. The trial court: (1) granted Kauka Farms' motion for summary judgment on the issue of statutory attorney fees; (2) denied Kauka Farms' motion for summary judgment on punitive damages; (3) denied Kauka Farms motion for summary judgment on the indefiniteness of the "20 acre" description; (4) denied Kauka Farms' application that Scott be preliminarily enjoined from using water from a well on the property; and (5) denied Kauka Farms' application to enjoin Scott from exercising control over a gardener's cottage.

In *Scott v. Kauka Farms, Inc.,* the cross-appeal, the sales agreement which survived the closing of the property provided that the sales price was calculated on an assumption that the value of timber on the property was $350,000. It further provided that the actual sales price would be determined by a subsequent timber cruise. Two timber cruises indicated different timber values and a lawsuit resulted. The judgment in that action set the value of the timber at $482,651. At this time the Scotts gave notice of intent to enforce the attorney fees provision in the note. The trial court ruled that attorney fees could not be recovered because of noncompliance with OCGA § 13-1-11 and by res judicata.

1. Kauka Farms insists that the trial court erred in denying its motion for summary judgment on the issue of the vagueness of the description of T. T. Scott's life estate. The description in the warranty deed reads "his home and 20 acres of land immediately surrounding his home." In *Clark v. Childs,* 253 Ga. 493 (321 SE2d 727) (1984), the life estate reserved to Mr. and Mrs. Childs was described as follows: " . . . the exclusive use of the home dwelling on said land now occupied by them, together with the garden and fruit trees thereon located adjacent to the tenant house on said land . . . ." Id. at 493. We found that this constituted a practicable description of the life estate and that the court's order delineating the boundaries did not expand the description. In analyzing this life estate for definite-

ness, we must consider whether the description in the deed contains a "key" to the intention of the grantor by which it may be identified by the aid of extrinsic evidence. *Smith v. Wilkinson*, 208 Ga. 489 (67 SE2d 698) (1951). The "key" in the present description is the fact that the twenty acres are "surrounding" the home. The location of the twenty acres can be ascertained by drawing a circle from the center of the house.

Kauka Farms relies on *Laurens County Bd. of Education v. Stanley*, 187 Ga. 389 (200 SE 294) (1938); *Williams v. Manchester Building Supply Co.*, 213 Ga. 99 (97 SE2d 129) (1957); and *Plantation Land Co. v. Bradshaw*, 232 Ga. 435 (207 SE2d 49) (1974), in its argument that the life estate fails due to vagueness. However, these cases are distinguishable from the present case. In *Stanley* the petitioners claimed title under a deed containing the following description: " 'ten acres of land which is hereafter to be surveyed, having said schoolhouse in the center, . . . being parts of two lots of land #93 and #94 adjoining land of John W. Smith and others.' " Id. at 389. The court held that this description held no "key" to the land intended to be conveyed. The court noted that the "key" refers to "a state of facts or circumstances existing at the time the deed is executed, and not to what may be the future intention of the grantor as may be expressed by acts or circumstances not already in existence at the time of the execution of the deed." Id. at 390. The court went on to say that the key must lead to boundaries in existence at the time of the execution of the conveyance and that a survey in the future did not do so. Since the deed showed on its face that there was no intention to convey a definite tract, the deed would fail as indefinite. The description in *Stanley* differs from the present case in an important particular. Although each refers to a building and to a definite acreage, the *Stanley* description tells nothing of the configuration of the land described. It could be a square with a building in the center or a rectangle or a circle. The use of the word "surrounding" in the case before us is the distinguishing factor. This description does not depend on a future determination because the description was definite when written. The description in *Stanley* required the future exercise of judgment rather than the mechanical following of directions. The conclusion reached here rests with the proposition that a description which identifies a central point and provides for definite acreage surrounding that point means a circle with the definite point in the middle. The definition of surround in Funk & Wagnalls Standard Dictionary is "to extend around; encircle; enclose."

In *Williams*, supra, the vendor was granted an option to reserve the house where the vendor lived together with fifty acres to the west and fifty acres to the east. The court refused to grant specific performance of a contract of sale containing this description. The

description in *Williams* differs from the present case in that again there is no key to the boundaries of the land and indeed no clue to the configuration of the possible reservation by the vendor.

In *Plantation Land Co. v. Bradshaw*, supra, the description of property excluded from the sales contract was: " 'the residential dwelling occupied by the seller together with a tract of property not exceeding 10 acres selected by seller.' " Id. at 436. The appellant in that case had argued that the "key" was provided by the seller's being authorized to choose the shape of the ten acres around the house and, secondly, a survey which was to be made in the future. The court found no "key" in the description because there was no definite indication of either size, shape, or location of the "up to 10 acres" exception. Id. at 440.

We find that unlike the descriptions discussed above, the description of the life estate here is clear on its face as to size, shape, and location. We hold that in a property description the term "surrounding," when not accompanied by any words of limitation, describes a circle the radius of which is determined by reference to the fixed landmark surrounded.

2. In their second enumeration of error Kauka Farms complains that the trial court erred in denying its application to temporarily enjoin Scott from using water from the well on the property. The court found that Kauka Farms had failed to show that the well was not within the 20 acres. The court found if the well is within the life estate Scott is entitled to use of the water.

Kauka Farms argues that Scott has no right to an easement of necessity to have access to the well because a grantor may not claim an implied easement against his grantee. *Farris Constr. Co. v. Briarcliff Rd. Assoc.*, 247 Ga. 578 (277 SE2d 673) (1981). However, this principle has nothing to do with a situation where the source of the water is located within the estate reserved by the grantor.

3. The court found that Scott has the right to use a gardener's cottage which is also in dispute. Kauka Farms says this is error because the life estate reservation does not specifically refer to the cottage. However, if as Scott argues the cottage is located in the twenty acres surrounding the house which are part of the life estate, the court correctly ruled that Scott has the right to use of the cottage.

4. Finally, Kauka Farms argues that the trial court erred in denying its motion for summary judgment on Scott's claim for punitive damages. OCGA § 13-6-10. Scott argues that since his amended complaint alleged conduct which Scott characterizes as wilful, intentional harassment, tortious interference with property rights, infliction of emotional distress, and an intentional effort to defraud Scott. Scott has not pled fraud with the particularity required by OCGA § 9-11-9 (b) but states the conclusion that he has been defrauded. The con-

duct which he asserts as harassment, tortious interference with property right, and infliction of emotional distress is nothing more than allegations of breach of contract. Therefore, Kauka Farms should have been granted summary judgment on the issue of punitive damages.

5. In their cross-appeal the Scotts and McChesney claim that the court erred in granting Kauka Farms summary judgment and dismissing that part of their complaint seeking 15% attorney fees based on a note and security deed. The amount owed under the note and security deed was litigated in a previous action, and the court found the present claim barred by res judicata and non-compliance with the statutory notice provisions of OCGA § 13-1-11.

Cross-appellants insist that since the other suit concerned only the amount owed, the claim for attorney fees is not barred by res judicata. They argue that since the suit was for the amount of the note it was only after that suit was concluded and the true amount was known that they could have given the notice required by OCGA § 13-1-11 (a) (1). At the end of the first suit, Kauka Farms sought a cancellation of the security deed. Following a hearing the court ordered that cross-appellants cancel the security deed and mark the note paid in full. This was done under duress, according to the cross-appellants. However, they did not appeal because they did not contend they were entitled to attorney fees in the first case. The trial court order also provided that since no attorney fees were claimed in the action on the note and since no evidence was presented on that issue, appellants were not entitled to recover attorney fees in that action under OCGA § 13-1-11.

Notice of intent to enforce the attorney fee provisions in a promissory note does not comply with OCGA § 13-1-4 when the notice is sent after the entry of judgment in the suit on the note. Further, since the claim could have been raised in the suit on the note and security deed, the claim for contractual attorney fees is barred by the doctrine of res judicata under OCGA § 9-12-40. This is true even though the amount of the note was not fixed until the court's judgment. The notice required by OCGA § 13-1-11 could have been sent even though there was uncertainty as to the amount due. See *Carlos v. Murphy Warehouse Co.,* 166 Ga. App. 406 (304 SE2d 439) (1983).

*Judgment affirmed in part and reversed in part, as to Case No. 43784. Judgment affirmed as to Case No. 43786. All the Justices concur.*

DECIDED JANUARY 28, 1987 —
RECONSIDERATION DENIED FEBRUARY 12, 1987.

*Alston & Bird, G. Conley Ingram, Steven M. Collins, Guttshall,*

*Cook & Guttshall, Martha J. Cook,* for appellant.
*Charles F. Johnson,* for appellees.