A89A0838, A89A0839. YEE v. BARNWELL.
(389 SE2d 392)

POPE, Judge.

Plaintiff-appellant Henry J. Yee filed these appeals from judgments entered on May 25, 1988, and June 1, 1988, sustaining a verdict in favor of defendant-appellee James R. Barnwell III. Because both appeals result from the same verdict, they are considered together.

Yee brought suit against Barnwell alleging fraud as a result of an investment deal. The facts leading to the instigation of the lawsuit were as follows: In 1985, Yee was seeking ways to reduce his tax liability. He mentioned this to his friend, Dave Clark. Clark told him that Barnwell had been able to help him in that regard. Clark then had Barnwell call Yee and arrange to meet. Barnwell and Yee met on December 30 after a telephone conversation in which Yee told Barnwell that he was interested in tax savings, plus overall financial planning. At the first meeting between the two, Yee gave Barnwell his '84 tax return, plus certain other information on Yee's land holdings. Barnwell took the information to his office and analyzed it. At a second meeting on the evening of December 30, Barnwell advised Yee that he needed not a tax shelter, but an income-producing asset. Barnwell told Yee about a young company called ICT-Interlect that produced and distributed educational software and videos. Barnwell told Yee that his brother was president of the company and that Barnwell had his own money in the company. Barnwell proposed that Yee buy an asset of the company, a completed film called "Renaissance in Space," plus the rights to a second film in production called "Living in Space." The price would be $125,000. Yee was required only to invest $10,000 in cash and sign for the remainder in short-term promissory notes. The corporation would use the notes as collateral to borrow the remainder of the money from a bank in South Carolina. Barnwell told Yee that the company would market the film and the income stream would take care of the payments on the notes. However, the bank in South Carolina with which the company dealt refused to do the loan. Barnwell and Yee then went to Yee's bank in Georgia and Yee borrowed $75,000 and signed a contract with ICT-Interlect to purchase the rights to "Renaissance in Space" only. The contract stipulated and Yee knew that $15,500 of the money was to go to satisfy an outstanding perfected lien against the film. The film did not produce the income expected and Yee and the company executed a buy-back agreement. When Yee called upon the company to honor the buy-back agreement the company indicated that it could not pay it. Yee then brought suit against the company for breach of contract and against Barnwell for fraud. Yee received a judgment against the company for the amount due, plus interest.

1. Yee argues that the trial court erred in directing a verdict for Barnwell on the issue of inceptive fraud or fraud in the inducement. We note that the trial court did submit to the jury the issues of actual fraud, duties of a fiduciary and the lower standard of fraud needed to be proved against one who acts as an investment advisor or financial planner. At one point, the trial court indicated that there could be no recovery for fraud in the inducement because the contract between ICT-Interlect and Yee contained a merger clause, Yee had affirmed

the contract and Barnwell was a third-party beneficiary to the contract by virtue of the $15,500 lien he had for money he had lent previously to the company. While we agree with Yee that Barnwell was not a third-party beneficiary, we find that it was not error to direct a verdict on the issue of fraud in the inducement.

"A third-party beneficiary contract is one in which the promisor engages to the promisee to render some performance to a third person. [Cit.] It must appear that both parties to the contract intended that a third person should be the beneficiary. [Cit.]" *Stewart v. Gainesville Glass Co.*, 131 Ga. App. 747, 753 (206 SE2d 857) (1974). Clearly, the contract in question was not intended for the benefit of Barnwell. Its purpose was to transfer the asset. However, even if the trial court erred in its analysis, it does not affect the correctness of its ruling. "A correct decision of a trial court will not be reversed, regardless of the reasons given therefor." *Coker v. City of Atlanta*, 186 Ga. 473 (1) (198 SE 74) (1938).

The situation in the present case is controlled by *Van Den Berg v. Northside Realty Assoc.*, 172 Ga. App. 591 (2) (323 SE2d 839) (1984). " 'The rule in this state is that where one who can read signs a contract without reading it, he is bound by the terms thereof, unless he can show that an emergency existed at the time of signing that would excuse his failure to read it, or that the opposite party misled him by an artifice or device which prevented him from reading it, or that a fiduciary or confidential relationship existed between the parties upon which he relied in not reading the contract. (Cit.)' *Cochran v. Murrah*, 235 Ga. 304, 305 (219 SE2d 421) (1975). [Yee] argues that the present case comes within the last exception because of the fiduciary relationship between principal and agent. However, the existence of such a relationship is not sufficient by itself. As the Supreme Court noted in *Cochran*, supra, it is the *reliance* upon that relationship which relieves one of the duty to read." *Van Den Berg* at 591-592.

Yee claims that he relied upon the fiduciary relationship between Barnwell and himself and this relieved him of any duty to inquire about the details of the deal and the contract he entered. The inceptive fraud he alleges is Barnwell's nondisclosure of his ownership or interest in the company and that the lien to be paid off belonged to him. Yet Yee's own testimony showed that he knew on December 30 that Barnwell had his money in the company and had an interest in the company and that Barnwell's brother was president. Three months passed before Yee actually signed the contract. Neither at the initial meetings on December 30 nor at anytime before the signing of the contract did Yee ask Barnwell about the lien or further inquire about Barnwell's interest in the company. (At trial, Barnwell testified that he owned 18 percent of the stock in the company.) In these circumstances, there is no evidence to justify reliance on a fiduciary rela-

tionship. Barnwell was acting as an agent for both the company and for Yee. He disclosed that fact to Yee. He never asked nor received compensation from Yee or from the company. As agent for the company, Barnwell was included within the protection of the merger clause.

2. Yee argues that the trial court's charge that it was lawful and proper for Barnwell to be reimbursed $15,500 for the lien he held was improper as a comment on the evidence. There is no merit to this argument. The evidence at trial showed that the lien pre-dated the deal with Yee, it was given for full consideration, and was duly recorded and perfected. The lien had to be satisfied to give Yee clear title to the asset he purchased.

3. Finally, Yee argues that the verdict is contrary to the weight of the evidence. "On appeal, the evidence must be construed to uphold the jury's verdict, and the sole question for determination is whether there is any evidence to authorize the verdict. [Cit.]" *Gold Kist Peanuts v. Alberson,* 178 Ga. App. 253, 254 (342 SE2d 694) (1986). There is evidence that supports the verdict. Consequently, the judgment must be affirmed.

*Judgments affirmed. Banke, P. J., and Sognier, J., concur.*

DECIDED DECEMBER 5, 1989.

*Moore & Rogers, William R. Johnson, G. Phillip Beggs,* for appellant.

*Glenville Haldi,* for appellee.