A09A2178. TEXTILE RUBBER & CHEMICAL COMPANY, INC. v. THERMO-FLEX TECHNOLOGIES, INC.
(687 SE2d 919)

BLACKBURN, Presiding Judge.

In this breach of contract action, Textile Rubber & Chemical Company appeals the summary judgment granted to Thermo-Flex Technologies arising out of Textile's anticipatory breach of its contract with Thermo-Flex. We hold that the evidence is undisputed

---

that Textile breached the contract by its anticipatory actions and that judgment in the amount of $500,000 (plus interest) was properly entered. However, because the other $1.5 million due under the contract was to be paid out of a percentage of Textile's divisional net profits (after net income had reached a certain point), we vacate and modify the damage formula to be followed in determining the present-value amount of these remaining damages.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So viewed, the evidence shows that on August 11, 2006, Textile and Thermo-Flex entered into an agreement whereby Thermo-Flex sold certain carpet-making technology to Textile for $3 million, with $500,000 to be paid at closing, $500,000 to be paid on January 1, 2007, $500,000 to be paid on December 31, 2007, and the remaining $1.5 million to be paid in quarterly installments from 25 percent of Textile's "Thermo-Tex" divisional net profits (after the net income of this division had totaled $6 million) until paid in full. Regarding the quality of the technology purchased, Textile agreed that it was buying such technology

> in an "as is" condition, that no warranties of any type (whether for merchantability or fitness for a particular purpose or use, express or implied, or otherwise) are being made by [Thermo-Flex], and that any and all such warranties are hereby expressly disclaimed to the fullest extent allowed by Georgia law.

The parties reiterated this disclaimer in the bill of sale as follows:

> NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER INCLUDING BUT NOT LIMITED TO, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, ARE BEING MADE WITH RESPECT TO ANY OF THE FOREGOING AND ALL SUCH WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED TO THE FULLEST EXTENT ALLOWED BY GEORGIA LAW.

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

YALE LAW LIBRARY

Textile paid the $500,000 due at closing and the January 1, 2007 $500,000 payment. As the time approached for the December 31, 2007 $500,000 payment, Textile determined that the technology purchased from Thermo-Flex was defective in that the technology resulted in far too many "volatile organic compounds" ("VOCs") being produced, which raised environmental concerns. Textile maintained that Thermo-Flex's president had specifically represented, promised, and warranted to Textile during contract negotiations that the amount of VOCs produced from the technology would be insignificant. Textile conceded that prior to buying the technology, Textile's representatives had run many tests on the technology but had not run a test on the technology's production of VOCs.

Concerned that resolving this VOC problem would be costly, Textile's representative met with Thermo-Flex's president on December 21, 2007, and informed Thermo-Flex in no uncertain terms that:

(a) Textile would not pay $500,000 to Thermo-Flex on December 31, 2007;

(b) Any funds expended by Textile in response to the VOC issues would be deducted from any future payment by Textile to Thermo-Flex; and

(c) Any future profit sharing paid to Thermo-Flex:

(1) would be paid after Textile recovered its investment in the technology;

(2) would be based only on those profits, if any, resulting directly from the technology; and

(3) would not be based on any profits resulting from any modification or improvement of those assets to correct the VOC issues with which the misrepresentations of Thermo-Flex were concerned.

Thermo-Flex refused to accept these stipulations and filed suit that same day for anticipatory breach of contract. Textile indeed did not pay the December 31, 2007 $500,000 payment to Thermo-Flex, instead paying such an amount to an escrow agent unassociated with Thermo-Flex. Textile eventually resolved the VOC problem by altering the process and changing suppliers of a chemical. In its answer, Textile asserted a counterclaim for breach of contract arising out of the VOC problems.

Thermo-Flex twice moved for partial summary judgment. Following the second motion, the trial court granted Thermo-Flex summary judgment in its favor as to the issue of anticipatory breach, as to Textile's liability for the unpaid December 31, 2007 $500,000 payment (plus interest), and as to Textile's counterclaim for breach of contract. As to Thermo-Flex's claim for the $1.5 million remaining due under the contract to be paid from net profits, the court ruled

that Thermo-Flex was entitled to "some or all of the $1.5 million if it can show with reasonable certainty the extent to which Defendant could have used the technology profitably." This issue was to be resolved by a jury. Textile appeals, claiming that the court erred in ruling that an anticipatory breach had been shown, that the $1.5 million could be recovered at this time, and that the counterclaim's breach of contract claim was unsupported.

1. Textile first claims that the trial court erred in ruling that the undisputed evidence showed an anticipatory breach of contract. We disagree.

> The anticipatory repudiation of a contract occurs when one party thereto repudiates his contractual obligation to perform prior to the time such performance is required under the terms of the contract. Thus when one party to a bilateral contract of mutual dependent promises *absolutely* refuses to perform and repudiates the contract prior to the time of his performance, the innocent party is at liberty to consider himself absolved from any future performance on his part. The breach which will form the basis for an anticipatory breach of contract action is an *unqualified* repudiation of the entire contract prior to the time for performance.

(Punctuation omitted; emphasis in original.) *Coffee Butler Svc. v. Sacha.*[2] See *Clark v. Cox*[3] ("[w]hen appellant repudiated his contractual obligation to perform prior to the time performance was required, an anticipatory repudiation of the contract occurred, forming the basis of [a] breach of contract action"); *J. M. Clayton Co. v. Martin.*[4]

Here, Textile freely admits that it told Thermo-Flex on December 21, 2007 in no uncertain terms that Textile would not be making the December 31, 2007 $500,000 payment, even though the contract specified no conditions on that payment. Textile further informed Thermo-Flex on that date that it was going to deduct its VOC expenses from any future payments, even though nothing in the contract allowed such, and that it was unilaterally altering the arrangement for payments out of future profits. These unilateral ultimatums, which Textile has followed with precision, constituted an absolute refusal to perform the contract as per its express material terms and thus was an unqualified repudiation of the entire

---

[2] *Coffee Butler Svc. v. Sacha*, 258 Ga. 192, 193 (1) (366 SE2d 672) (1988).

[3] *Clark v. Cox*, 179 Ga. App. 437, 438 (1) (347 SE2d 4) (1986).

[4] *J. M. Clayton Co. v. Martin*, 177 Ga. App. 228, 230 (339 SE2d 280) (1985).

contract prior to the time of performance. See *Wilson v. Milam*.[5]

Textile tries to characterize its repudiation as a mere attempt to renegotiate some of the contract's terms, which would not be an anticipatory breach of contract. But the cases are quite clear that such attempts to renegotiate must be accompanied by the party's "intention to abide by the contract" if the terms were not agreed upon, *Jones v. Solomon*,[6] something which Textile's ultimatums did not contemplate and something which in fact Textile did not do when it refused to make the December 31, 2007 $500,000 payment. Compare *J. M. Clayton Co.*, supra, 177 Ga. App. at 230-231 (2) ("appellee proposed to vary the terms of the contract but agreed to be bound by the contract if the variations were not acceptable to appellant").

The trial court did not err in granting Thermo-Flex summary judgment as to Textile's anticipatory breach of contract and to entry of judgment in the amount of the unconditional $500,000 payment (plus interest).

2. With regard to the $1.5 million to be paid out of net profits, the trial court ordered: "Since the parties contracted for profit-sharing, Plaintiff is entitled to some or all of the $1.5 million if it can show with reasonable certainty the extent to which Defendant could have used the technology profitably."

It is true that under these circumstances, damages may be awarded if certain things can be shown. "Where . . . the promise to pay is contingent upon the occurrence of a future event as well as the arrival of a future time, it is not an unconditional promise to pay until the issue of fact — whether or not the event will take place — can be determined with reasonable certainty." (Punctuation omitted.) *Continental Cas. Co. v. Stephenson*.[7] See generally *James E. Warren, M.D., P.C. v. Weber & Warren Anesthesia Svcs*.[8] Indeed, "the mere fact that the alleged contract contained a contingency of such nature does not render it void. Nor does the fact that the contingency was not certain to occur render rights under the contract unenforceable if it be found that the contract was repudiated." (Citation omitted.) *Jinright v. Russell*.[9] In fact, *Jinright* concluded that "[a] party may not repudiate a contract and at the same time seek the

---

[5] *Wilson v. Milam*, 156 Ga. App. 328, 328 (2) (274 SE2d 720) (1980).

[6] *Jones v. Solomon*, 207 Ga. App. 592, 594 (1) (428 SE2d 637) (1993).

[7] *Continental Cas. Co. v. Stephenson*, 112 Ga. App. 666, 667-668 (2) (145 SE2d 825) (1965).

[8] *James E. Warren, M.D., P.C. v. Weber & Warren Anesthesia Svcs.*, 272 Ga. App. 232, 236-237 (2) (612 SE2d 17) (2005).

[9] *Jinright v. Russell*, 123 Ga. App. 706, 709 (2) (182 SE2d 328) (1971).

advantage of a stipulation in the very contract he has repudiated." Id.

The precise language of the profit-sharing arrangement was that the final $1.5 million to be paid under the contract would be paid as follows: "After Buyer's net income after a provision of income taxes from sales of thermoplastics as defined by buyer's 'Thermo Tex' divisional income statement totals $6,000,000, Buyer will pay quarterly to Seller 25% of net profit until such time as Seller is paid an additional $1,500,000." Accordingly, based on reasonably-certain evidence presented by Thermo-Flex, a jury should resolve — not "the extent to which Defendant could have used the technology profitably" — but rather the time frame in which Textile's "Thermo-Tex" division will likely show a net income of $6,000,000, and what 25 percent of its anticipated quarterly net profits will likely be thereafter. This will give a jury the time context over which the $1.5 million should be paid, which will allow the jury to calculate the present value of the $1.5 million so as to calculate an award. We vacate the portion of the summary judgment addressing this area of damages and remand with the instruction to follow the concepts set forth herein.

3. Textile complains that the trial court entered summary judgment in favor of Thermo-Flex on Textile's breach of contract counterclaim. We conclude that summary judgment was properly entered.

The breach of contract claim posits that as a term of the contract between the parties, the technology being sold thereunder was not to produce significant VOCs in the process. Textile claims that although not included in the written contract (which contains no merger clause), this term was an additional parol term promised by Thermo-Flex during negotiations. But "[p]arol contemporaneous evidence is generally inadmissible to contradict or vary the terms of a valid written instrument." OCGA § 24-6-1. Here, the parties in the written contract expressly disclaimed any and all representations and warranties about the technology being sold, and even specified that the technology was sold "as is," reaffirming the lack of any representations as to whether the technology would produce significant VOCs. Textile admitted that indeed the assets and technology it received under the contract "were in substantially the same condition as of the date of the Contract, reasonable wear, tear and depreciation excepted."

Thus, any alleged parol evidence as to an additional contract term requiring VOC production to be insignificant would contradict the express disclaimers and "as is" language of the written contract. Because such would therefore be inadmissible under OCGA § 24-6-1, the trial court did not err in granting Thermo-Flex summary

judgment on Textile's breach of contract counterclaim.

*Judgment affirmed in part and vacated in part, and case remanded with instructions. Adams and Doyle, JJ., concur.*

DECIDED DECEMBER 9, 2009.

*Coppedge & Leman, Warren N. Coppedge, Jr.*, for appellant.
*Edward Hine, Jr., Daniel R. Hoyt*, for appellee.