A10A2016. TEXTILE RUBBER AND CHEMICAL COMPANY, INC. v. THERMO-FLEX TECHNOLOGIES, INC. et al.

(706 SE2d 728)

BARNES, Presiding Judge.

This is the second appeal of this case, which arose out of a dispute between the parties over an agreement to sell certain carpet-making technology for $3 million. In the first appeal, we affirmed the trial court's decision that the plaintiff, Thermo-Flex Technologies, Inc., was entitled to $500,000 in damages as a matter of law, based upon the defendant Textile Rubber and Chemical Company, Inc.'s failure to make an installment payment, but remanded the case for a jury to decide additional damage claims. *Textile Rubber and Chemical Co. v. Thermo-Flex Technologies*, 301 Ga. App. 491 (687 SE2d 919) (2009). On remand, Thermo-Flex moved for summary judgment against Textile on its claim for statutory attorney fees based on the $500,000 damages awarded. The trial court granted the motion. The third-party defendants, Larry Mullinax and Technology Works, Inc., also moved for summary judgment on the cross-claims brought against them by Textile, and the trial court likewise granted their motion. Textile now appeals these summary judgment rulings made by the trial court on remand. For the following reasons, we affirm the trial court's grant of summary judgment to Thermo-Flex on its attorney fees claim and to the third-party defendants on Textile's cross-claims for tortious interference with contract, breach of warranty, and indemnity. We reverse the trial court's grant of summary judgment to the third-party defendants on Textile's cross-claims for fraud, negligent mis-

---

representation, and breach of duty to principal.

> When reviewing the grant . . . of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Footnotes omitted.) *Smith v. Gordon*, 266 Ga. App. 814 (1) (598 SE2d 92) (2004). See OCGA § 9-11-56 (c).

So viewed, the record showed that at all times relevant to this dispute, Larry Mullinax was the president and owner of 50 percent of the outstanding shares of Thermo-Flex Technologies, Inc., which was in the business of developing a thermoplastic recyclable backing system for carpets. Mullinax also was the president, chief executive officer, chief financial officer, and owner of Technology Works, Inc., a consulting firm in the area of thermoplastic technology.

Due to his expertise in the area, Textile Rubber and Chemical Company, Inc. hired Mullinax to serve as its consultant in the application of thermoplastic technologies in the flooring industry. Mullinax had previously been an employee of Textile and had a longstanding relationship with its founder. Textile paid Mullinax $100,000 a year for his role as a consultant. Mullinax informed Textile that his other company, Thermo-Flex, had developed a thermoplastic recyclable backing system that was ready to go to market and proposed a partnership between the two companies. Mullinax repeatedly advised Textile that the technology developed by Thermo-Flex did not produce a significant amount of "volatile organic compounds" ("VOCs"), which would raise environmental concerns and would be an important issue to potential customers. Textile chose not to perform its own independent testing of Thermo-Flex's technology for VOCs after Mullinax advised that such testing was unnecessary and would be "a waste of money."

Textile and Mullinax ultimately concluded that it made more business sense for Textile to simply purchase the thermoplastic backing technology from Thermo-Flex rather than form a partnership. Consequently, on August 11, 2006, Thermo-Flex sold its technology to Textile in return for $3 million in installment payments (the "Agreement"). The Agreement specified that Textile would make three separate payments of $500,000 to Thermo-Flex on the closing date of the sale, on January 1, 2007, and on December 31, 2007, respectively. The Agreement provided that the remaining $1.5 million would be paid in quarterly installments based upon a formula relating

to Textile's future net income and net profits. In addition to these installment payments, Textile agreed that it would "pay to [Thermo-Flex] all costs and expenses, including reasonable attorney[ ] fees incurred by [Thermo-Flex] in enforcing any of the covenants and provisions of this Agreement and incurred in any action brought by [Thermo-Flex] against [Textile] on account of the provisions hereof."

With respect to the quality of the technology purchased, the Agreement provided that Textile was buying the technology

> in an "as is" condition, that no warranties of any type (whether for merchantability or fitness for a particular purpose or use, express or implied, or otherwise) [were] being made by [Thermo-Flex], and that any and all such warranties [were] . . . expressly disclaimed to the fullest extent allowed by Georgia law. The bill of sale for the technology contained a similar disclaimer of all express or implied warranties.

Following execution of the Agreement, Textile paid the $500,000 due at closing and on January 1, 2007. In the summer of 2007, customers notified Textile that the technology produced problematic levels of VOCs. Textile launched its own investigation which confirmed the presence of considerable levels of VOCs. As a result, Textile informed Thermo-Flex that it would not be making the third $500,000 payment due on December 31, 2007, and that it planned to make certain modifications to its installment payments relating to future net profits.

Unwilling to accept Textile's unilateral changes to the payment arrangements, Thermo-Flex sued Textile for anticipatory breach of contract and sought contractual damages of $2,000,000, plus accrued interest, court costs, and attorney fees. Textile counterclaimed for breach of contract on the ground that the technology was defective for containing problematic levels of VOCs. Textile also successfully moved to add Mullinax and Technology Works as third-party defendants and asserted cross-claims against them for tortious interference with contract, breach of warranty, fraud, negligent misrepresentation, breach of duty to principal, and indemnity.

The trial court thereafter granted partial summary judgment to Thermo-Flex, concluding that the uncontroverted evidence showed that Textile had committed an anticipatory breach of contract by unilaterally changing the payment arrangements. Regarding the measure of damages, the trial court ruled that Thermo-Flex was entitled to entry of judgment in the amount of $500,000 plus interest based upon Textile's failure to make the December 31, 2007 installment payment. As to the $1.5 million in installment payments

relating to Textile's future net profits, the trial court ruled that Thermo-Flex was "entitled to some or all of the $1.5 million if it [could] show with reasonable certainty the extent to which [Textile] could have used the technology profitably." Additionally, the trial court granted summary judgment to Thermo-Flex on Textile's breach of contract counterclaim, reasoning that any oral representations concerning VOCs would constitute inadmissible parol evidence and could not be used to vary the plain terms of the warranty disclaimers in the Agreement. The trial court reserved ruling on the issue of attorney fees.

Textile appealed to this Court, and we affirmed in part and vacated in part the trial court's decision. See *Textile Rubber & Chemical Co. v. Thermo-Flex Technologies*, 301 Ga. App. at 491. We affirmed the trial court's grant of summary judgment in favor of Thermo-Flex on its claim for anticipatory breach of contract and against Textile on its counterclaim for breach of contract. Id. at 494-495 (1), 496-497 (3). We also affirmed the trial court's entry of judgment in the amount of $500,000 plus interest for Textile's refusal to make the December 31, 2007 installment payment. Id. at 494-495 (1). However, we vacated the trial court's ruling as to the $1.5 million in installment payments relating to future net profits and held that Thermo-Flex was entitled to recover the present value of the $1.5 million after that value was determined by a jury using the formula set out in our opinion. Id. at 495-496 (2).

Following remand, Textile paid to Thermo-Flex the $500,000 plus accrued interest in satisfaction of the judgment relating to the unpaid December 31, 2007 installment payment. Thermo-Flex then moved for summary judgment on its claim for attorney fees predicated on its recovery of those damages. Thermo-Flex argued that it was entitled to attorney fees pursuant to OCGA § 13-1-11 because it made a proper written demand for those fees and Textile failed to pay the amount demanded. Textile responded that Thermo-Flex could not recover attorney fees because its demand letter failed to comply with the statutory notice requirements. Concluding that Thermo-Flex had made a demand for attorney fees that substantially complied with OCGA § 13-1-11, the trial court granted summary judgment to Thermo-Flex and entered judgment in the amount of $55,417.65, representing the amount of fees owed by Textile.

Mullinax and Technology Works also moved for summary judgment, contending that there were no genuine issues of material fact as to Textile's cross-claims for tortious interference with contract, breach of warranty, fraud, negligent misrepresentation, breach of duty to principal, and indemnity. Textile responded that there were several disputed issues of material fact and that Mullinax and Technology Works had no standing to invoke or enforce the warranty

disclaimers in the Agreement since they were not parties to that contract. Concluding that all of Textile's cross-claims failed as a matter of law, the trial court granted summary judgment in favor of Mullinax and Technology Works. This appeal followed in which Textile challenges the two summary judgment decisions by the trial court on remand.

1. Textile first claims that the trial court erred in ruling that Thermo-Flex's demand letter complied with the notice requirements imposed by OCGA § 13-1-11 for the recovery of attorney fees. We disagree.

OCGA § 13-1-11 establishes limits and procedures regarding obligations to pay attorney fees "upon any note or other evidence of indebtedness" and such obligations "contained in security deeds and bills of sale to secure debt." OCGA § 13-1-11 (a), (b).[1] The parties do not dispute that OCGA § 13-1-11 applies in this case. As a prerequisite to obtaining OCGA § 13-1-11 attorney fees, the party seeking the fees is required to issue a demand notice, which must

> (1) be in writing, (2) to the party sought to be held on the obligation, (3) after maturity, (4) [state] that the provisions relative to payment of attorney fees in addition to principal and interest will be enforced, and (5) [state] that the party has 10 days from the receipt of such notice to pay the principal and interest without the attorney fees.

*Gen. Elec. Credit Corp. of Ga. v. Brooks*, 242 Ga. 109, 119 (249 SE2d 596) (1978). See OCGA § 13-1-11 (a) (3); *Trust Assoc. v. Snead*, 253 Ga. App. 475, 476 (1) (559 SE2d 502) (2002). "Substantial compliance with the notice requirement of OCGA § 13-1-11 is all that is required to allow for the recovery of attorney fees." *Community Marketplace Properties v. SunTrust Bank*, 303 Ga. App. 403, 405 (1) (693 SE2d 602) (2010). See *Gen. Elec. Credit Corp. of Ga.*, 242 Ga. at 118. "So long as a debtor is informed that he has 10 days from receipt of notice within which to pay principal and interest without incurring any liability for attorney fees[,] the legislative intent behind the enactment of [OCGA § 13-1-11] has been fulfilled." (Emphasis omitted.) *Gen. Elec. Credit Corp. of Ga.*, 242 Ga. at 118.

---

[1] Where, as here, the underlying contract "provides for the payment of reasonable attorney[ ] fees without specifying any specific percent," OCGA § 13-1-11 provides that the party seeking fees may recover "15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00." OCGA § 13-1-11 (a) (2). Textile does not challenge the trial court's method of calculating the attorney fees or the specific amount of fees awarded; rather, Textile's challenge is limited to whether the preconditions for such an award were met.

Here, Thermo-Flex relied upon a demand letter that its counsel sent to Textile's counsel by e-mail and first class mail, return receipt requested, on January 9, 2009 (the "Demand Letter"). The Demand Letter quoted the attorney fees provision contained in the Agreement and stated that Thermo-Flex intended to enforce that provision in this case. The Demand Letter further provided: "Pursuant to OCGA § 13-1-11, notice is herewith given that Textile . . . may avoid the obligation to pay [Thermo-Flex's] attorney[ ] fees by paying the open principal balance due under the Agreement of $2,000,000 within ten (10) days of your receipt of this letter." The $2,000,000 represented the unpaid $500,000 installment payment due on December 31, 2007 plus the unpaid $1.5 million in quarterly installment payments relating to Textile's future net profits. Textile did not make any payments to Thermo-Flex within ten days of receiving the Demand Letter; Textile instead waited and paid $500,000 plus interest to Thermo-Flex after this Court affirmed the entry of judgment in that amount on December 9, 2009. Thermo-Flex then moved for attorney fees in the amount of $55,417.65 for its recovery of the $500,000 plus interest.

Textile argues that the Demand Letter did not substantially comply with the notice requirements of OCGA § 13-1-11 because it demanded payment of the full amount of Thermo-Flex's claims, $2 million, not the $500,000 as to which Thermo-Flex was awarded summary judgment and upon which judgment had already been entered. Specifically, Textile contends that the Demand Letter was deficient because it demanded payment of $2 million even though (a) only $500,000 of Textile's payment obligations has matured, and (b) Thermo-Flex ultimately will recover an amount less than the full "face value" of the $1.5 million payment obligation relating to future net profits, since a jury will be instructed to determine the present value of that obligation.

(a) Contrary to Textile's contention, its full payment obligations have matured. An anticipatory breach of contract accelerates the maturity of the indebtedness and entitles the creditor to demand the face value of the total unpaid debt. See *Valley View Church of God in Christ v. King*, 236 Ga. 337, 337-338 (223 SE2d 701) (1976). Furthermore, a demand notice is timely and proper under OCGA § 13-1-11 even if the specific amount due under the contract will "not [be] fixed until the court's judgment." *Kauka Farms v. Scott*, 256 Ga. 642, 646 (5) (352 SE2d 373) (1987). Thus, upon Textile's anticipatory breach of the Agreement, Thermo-Flex was entitled to issue a demand for the face value of the total remaining unpaid debt, $2 million, prior to the entry of judgment on the indebtedness.

(b) We likewise reject Textile's argument that the Demand Letter was deficient because Thermo-Flex ultimately will recover an

amount less than the face value of the $1.5 million payment obligation. A creditor substantially complies with the notice requirements of OCGA § 13-1-11 by setting forth the face value of the debt as reflected in the plain terms of the contract. See *Carlos v. Murphy Warehouse Co.*, 166 Ga. App. 406, 408 (2) (304 SE2d 439) (1983); *Shier v. Price*, 152 Ga. App. 593, 595 (2) (263 SE2d 466) (1979). Moreover, a demand notice is sufficient under the statute, even if the face value reflected in the notice is different from the amount that a jury later determines to be due. See *Kroger Co. v. U. S. Foodservice of Atlanta*, 270 Ga. App. 525, 530-531 (3) (607 SE2d 177) (2004); *Carlos*, 166 Ga. App. at 408 (2); *Williams v. First Bank & Trust Co.*, 154 Ga. App. 879, 883-884 (5) (269 SE2d 923) (1980). See also *Kauka Farms*, 256 Ga. at 646 (5) ("The notice required by OCGA § 13-1-11 could have been sent even though there was uncertainty as to the amount due."). Accordingly, the Demand Letter substantially complied with OCGA § 13-1-11 by setting forth the face value of the unpaid debt obligation, $2 million, even if Thermo-Flex ultimately may recover somewhat less than that amount after a jury calculates its present value.

For these reasons, there was no genuine issue of material fact as to whether the Demand Letter issued by Thermo-Flex was defective under OCGA § 13-1-11. The trial court, therefore, correctly granted summary judgment to Thermo-Flex on its statutory attorney fees claim.

2. Textile next argues that the trial court erred in granting summary judgment to Mullinax and Technology Works on its cross-claims for breach of warranty, fraud, negligent misrepresentation, breach of duty to principal, and indemnity.[2] We affirm the trial court's grant of summary judgment on Textile's cross-claims for breach of warranty and indemnity, but we conclude that there were genuine issues of material fact precluding summary judgment on the cross-claims for fraud, negligent misrepresentation, and breach of duty to principal.

(a) Textile maintains that the trial court erred in ruling that its cross-claim for breach of warranty against the third-party defendants could not succeed in light of the dismissal of its counterclaim for breach of warranty against Thermo-Flex. But, in its brief filed in the trial court, Textile conceded that summary judgment would be proper on this cross-claim if we affirmed the trial court's grant of

---

[2] Textile does not challenge the trial court's grant of summary judgment on its cross-claim for tortious interference with contract or present any argument with respect to that claim in its appellate brief. Any challenge to that ruling by the trial court thus has been abandoned. See Court of Appeals Rule 25 (a) (3) and (c) (2); *Steed v. Fed. Nat. Mtg. Corp.*, 301 Ga. App. 801, 804, n. 2 (689 SE2d 843) (2009).

summary judgment to Thermo-Flex on Textile's breach of warranty counterclaim. And we did affirm the trial court's grant of summary judgment on Textile's counterclaim in our previous decision, see *Textile Rubber & Chemical Co.*, 301 Ga. App. at 496-497 (3), as the trial court noted in its order granting summary judgment to the third-party defendants on the breach of contract cross-claim. Textile cannot now undo its concession on appeal. "To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, '[A party] must stand or fall upon the position taken in the trial court.'" (Citation omitted.) *Heard v. City of Villa Rica*, 306 Ga. App. 291, 293 (1) (701 SE2d 915) (2010). See also *Craig v. Bailey Bros. Realty*, 304 Ga. App. 794, 798 (2), n. 3 (697 SE2d 888) (2010) ("We will not consider new arguments in opposition to a motion for summary judgment raised for the first time on appeal.").

(b) Textile also maintains that the trial court erred in ruling that its fraud and negligent misrepresentation cross-claims failed as a matter of law because it could not prove reasonable reliance. Both fraud and negligent misrepresentation require the injured party to prove reasonable reliance upon the alleged misrepresentations of the tortfeasor. See *Hardaway & Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1) (479 SE2d 727) (1997); *Alexander v. A. Atlanta Autosave*, 272 Ga. App. 73, 75 (1) (611 SE2d 754) (2005). The trial court held that Textile could not establish that it reasonably relied upon Mullinax's alleged misrepresentations concerning the level of VOCs in Thermo-Flex's thermoplastic backing technology, given that the Agreement contained disclaimer of warranty language.

The trial court's ruling was erroneous because it incorrectly assumed that Mullinax and Technology Works were entitled to invoke and enforce the disclaimer provision of the Agreement even though they were not parties to that contract. The disclaimer provision in the Agreement referred only to warranties by the "Seller," defined in the Agreement as Thermo-Flex. Nor did the disclaimer in the bill of sale refer to representations or warranties by non-contracting parties. Moreover, the mere fact that someone would benefit from the performance of a contract is insufficient to give that person standing to enforce the contract. *Marvel Enterprises v. World Wrestling Federation Entertainment*, 271 Ga. App. 607, 614 (5) (610 SE2d 583) (2005). Rather, there must be a showing that the person was a third-party beneficiary. Id. Here, neither Mullinax nor Technology Works claimed to be a third-party beneficiary of the Agreement. It follows that Mullinax and Technology Works had no standing to invoke or enforce the protections afforded by the Agreement in order to preclude the fraud and negligent misrepresentation cross-claims brought against them.

It is true that under certain circumstances, an agent of a contracting party may be entitled to rely upon a disclaimer or merger clause contained in the contract to preclude claims against the individual agent for his or her alleged representations. See *Tampa Bay Finance v. Nordeen*, 272 Ga. App. 529, 534 (2) (612 SE2d 856) (2005); *Yee v. Barnwell*, 193 Ga. App. 820, 822-823 (1) (389 SE2d 392) (1989). In the present case, however, Mullinax was not simply acting as an agent for Thermo-Flex in his dealings with Textile. Rather, Mullinax also had a pre-existing relationship with Textile under which he was being paid $100,000 a year to serve as a consultant and expert to Textile on the very technology forming the basis for the Agreement.[3] Under these unique circumstances, a jury would be entitled to find that Textile reasonably relied on the representations made by Mullinax concerning the level of VOCs in Thermo-Flex's technology, thereby giving Textile the false assurance that it could safely enter into an "as is" purchase agreement with Thermo-Flex. Accordingly, there were genuine issues of material fact on the issue of reasonable reliance that must be resolved by a jury rather than by the courts.[4] See *Potts v. UAP-GA AG CHEM*, 256 Ga. App. 153, 156 (1) (567 SE2d 316) (2002) ("Whether reliance is reasonable is normally a question for the jury[.]"). The trial court thus erred in granting summary judgment to Mullinax and Technology Works on the fraud and negligence misrepresentation cross-claims.

(c) Textile further maintains that the trial court erred in ruling that its cross-claim for breach of duty to principal failed as a matter of law because it could not prove proximate cause. An essential element of a tort claim for breach of duty is that the alleged negligence be a proximate cause of the plaintiff's injury. See *Hoffman v. Insurance Co. of North America*, 241 Ga. 328, 329-330 (245 SE2d 287) (1978). The trial court held that proximate cause could not be established because Textile's act of signing the Agreement with the

---

[3] In *Yee*, the defendant served as an agent of both the buyer and seller, but he was not paid to act as the agent of the buyer. See *Yee*, 193 Ga. App. at 822-823 (1). Furthermore, the alleged fraud in *Yee* was that the defendant failed to disclose his ownership or interest in the seller company to the buyer, but the record showed that the buyer learned that the defendant held such an interest several months before executing the contract yet inquired no further. Id. We held that under those circumstances, "there [was] no evidence to justify reliance on a fiduciary relationship" between the defendant and buyer. Id. at 822 (1). Here, in contrast, there was evidence in the record that Mullinax was paid a significant sum to serve as a consultant and expert to Textile, and Textile did not learn of the problematic levels of VOCs until after executing the Agreement because of Mullinax's advice and recommendations as its consultant.

[4] Mullinax and Technology Works also contend that by entering into the Agreement containing the disclaimer provision, Textile was estopped from and waived any claim that it relied upon or was injured by the representations of Mullinax. Again, however, Mullinax and Technology Works' contention is predicated upon the false assumption that they were entitled to rely upon the protections afforded by the Agreement, even though they were not parties to the contract, third-party beneficiaries, or merely agents of a contracting party.

disclaimer provision cut off any causal connection between Mullinax's alleged misrepresentations and any damages that Textile suffered.

The trial court erred in concluding that a jury could not find that Mullinax's alleged misrepresentations proximately caused Textile's damages.

> It is well settled that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent, intervening, act or omission of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's act, and which was sufficient of itself to cause the injury.

(Citation omitted.) *Pruette v. Phoebe Putney Memorial Hosp.*, 295 Ga. App. 335, 341 (1) (c) (671 SE2d 844) (2008). Hence, an intervening act does not break the causal connection between the defendant's conduct and the plaintiff's injury, if the intervening act was triggered by the defendant's conduct or could have reasonably been anticipated or foreseen by the defendant. See *Walker v. Giles*, 276 Ga. App. 632, 645 (2) (624 SE2d 191) (2005).

In the instant action, a jury could find that Textile's act of entering into the Agreement containing the disclaimer provision was triggered by the misrepresentations of its paid consultant and expert, Mullinax. Likewise, a jury could find that Mullinax reasonably could have anticipated or foreseen that his misrepresentations concerning the level of VOCs while serving as a paid consultant and expert would lead Textile to enter into the Agreement. Proximate cause is generally an issue for the jury, see *Walker*, 276 Ga. App. at 643 (2), and there is no reason to deviate from this rule under the specific facts of this case. The trial court therefore erred in granting summary judgment to Mullinax and Technology Works on the cross-claim for breach of duty to principal.

(d) Finally, Textile maintains that the trial court erred in ruling that its indemnity cross-claim failed as a matter of law because it did not meet the requirements of such a claim under the common law.[5]

> The duty to indemnify may arise by operation of law, independently of contract. If a person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action

---

[5] Textile does not contend that it had an express or implied indemnification contract with Mullinax and Technology Works.

for indemnity against the person whose wrong has thus been imputed to him. Here, no wrong has been imputed to [Textile], nor does [Textile] have any vicarious liability. Rather, [Textile's] duty to pay stemmed from its contractual obligation [to Thermo-Flex]. Under these circumstances, common law indemnity principles do not apply.

(Punctuation and footnotes omitted.) *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 557 (2) (583 SE2d 220) (2003). It follows that the trial court did not err in granting summary judgment to Mullinax and Technology Works on the cross-claim for common law indemnity. See id.; *North Georgia Elec. Membership Corp. v. Thomason & Holsomback Constr. Co.*, 157 Ga. App. 719, 720 (1) (278 SE2d 433) (1981).

*Judgment affirmed in part and reversed in part. Blackwell and Dillard, JJ., concur.*

DECIDED FEBRUARY 24, 2011.

*Coppedge & Evans, Warren N. Coppedge, Jr., Joseph B. Evans*, for appellant.
*Edward Hine, Jr., Daniel R. Hoyt*, for appellees.