## A11A0342. JAN-PRO FRANCHISING INTERNATIONAL, INC. v. DEPIANTI.
### (712 SE2d 648)

DOYLE, Judge.

Jan-Pro Franchising International, Inc. ("JPI") brought this declaratory judgment action against Giovani Depianti and Hyun Ki Kim, seeking, in relevant part, a judgment that Depianti and Kim were not its employees under the Massachusetts Independent Contractor Statute ("MICS").[1] The parties filed cross-motions for summary judgment, and the trial court found that issues of fact precluded summary judgment as to Kim, but the court granted summary judgment to Depianti. JPI now appeals the ruling as to Depianti, and for the reasons that follow, we reverse.[2]

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable

---

[1] Mass. Gen. Laws ch. 149, § 148B.

[2] JPI does not enumerate error or provide argument in its brief challenging the trial court's finding of factual issues with respect to Kim. Therefore, we do not address the trial court's ruling as to Kim. See Court of Appeals Rule 25 (c) (2); *Textile Rubber &c. Co. v. Thermo-Flex Technologies*, 308 Ga. App. 89, 95, n. 2 (706 SE2d 728) (2011).

conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[3]

So viewed, the record shows that JPI created a master franchise plan for commercial cleaning businesses. JPI entered into franchise agreements with other companies ("regional franchisees") that would be assigned the rights to use JPI's franchise branding and processes in a designated region in exchange for certain fees. Those regional franchisees would then enter into unit franchise agreements with individuals or companies ("unit franchisees") who would perform cleaning services for client accounts provided by the regional franchisee in exchange for specified fees. In the unit franchise agreement, the regional franchisee promised to provide a particular volume of cleaning business to each unit franchisee.

Depianti, who lived and worked in Massachusetts, became a unit franchisee in the JPI franchise system. After a dispute arose between Depianti and his regional franchisee, he and other unit franchisees initiated arbitration proceedings in Massachusetts asserting claims that they should be classified as employees and not independent contractors, and were therefore eligible for more favorable treatment under Massachusetts law.[4] JPI filed a complaint in Massachusetts to avoid participation in the arbitration, and Depianti dismissed JPI from the arbitration. Thereafter, JPI, which is headquartered in Alpharetta, Georgia, filed this action in the Fulton County Superior Court, seeking to clarify the employment status of Depianti as a unit franchisee.[5] After a hearing, the trial court granted summary judgment to Depianti, ruling that he was JPI's employee under the MICS.[6] JPI now appeals.

The MICS provides as follows, in relevant part:

> For the purpose of this chapter [pertaining to labor and industries] and chapter 151 [pertaining to minimum fair wages], an individual performing any service, except as authorized under this chapter, shall be considered to be an

---

[3] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[4] "Proper classification of an individual as an independent contractor or an employee may determine whether an employer has violated certain provisions of Massachusetts labor laws, such as an employee's right to overtime pay and workers' compensation benefits." *Fucci v. Eastern Connection Operating*, No. 2008-2659 (Mass. Super. Ct. Middlesex Sept. 21, 2009) (order granting motion for partial summary judgment).

[5] Depianti did not appeal the portion of the trial court's order finding that it had personal jurisdiction over him.

[6] The trial court's order states that it granted Depianti summary judgment "on his Massachusetts state law claim." Although Depianti filed no claim in the superior court, we construe this as a ruling favorable to Depianti's trial court argument that he was JPI's employee under the MICS.

employee under those chapters unless:

(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

(2) the service is performed outside the usual course of the business of the employer; and,

(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.[7]

Under Massachusetts law, the putative employer has the burden to overcome a rebuttable presumption that "any person performing services for another is an employee unless the employer meets the three prong test" above.[8]

(a) *Free from control and direction.* We have not encountered facts similar to the present scenario in cases applying the MICS. We note at the outset that the MICS does not on its face limit its application to any one employer. Thus, a literal reading that "employee" includes any "individual performing any service" who is not "free from control and direction in connection with the performance of the service" would mean every worker is necessarily an employee. Because some form of control — by a client or otherwise — is inherent in the performance of every service, such a strict reading of the statute would yield the absurd result that every worker is an employee, no matter who exerts the control.[9] Thus, implicit in this language must be some control *by the employer,* even though the statutory language fails to explicitly refer to the employer — a worker for Company A cannot be deemed an employee of Company B simply because the worker performs "any service" that is subject to some control, albeit by Company A.

---

[7] (Punctuation omitted.) Mass. Gen. Laws ch. 149, § 148B (a). The unit franchise agreement provides that it will be governed according to the laws of Massachusetts. The trial court did not conduct a choice of law analysis and neither party challenges the applicability of Massachusetts law.

[8] (Punctuation omitted.) *Chaves v. King Arthur's Lounge, Inc.,* No. 07-2505 (Mass. Sup. Ct. Suffolk July 20, 2009) (order addressing cross-motions for summary judgment). "Courts have had limited opportunity to interpret the independent contractor law. Because [the MICS] is nearly identical to [Mass. Gen. Laws ch.] 151A, § 2, the statute used by the Division of Unemployment Assistance, courts have relied on case law analyzing the latter statute to interpret the former." Id. at n. 3. Where appropriate and necessary, we have done the same here.

[9] See *Athol Daily News v. Bd. of Review &c.,* 439 Mass. 171, 180 (3) (c) (786 NE2d 365) (2003) (disapproving of an overly strict, literal interpretation of the statute that would deny independent contractor status to nearly all workers and render superfluous any examination of other criteria in the test).

Turning to this case, the undisputed facts show that Depianti performs work as a unit franchisee pursuant to a contract with the regional franchisee, a company called BradleyMktg Enterprises, Inc. ("BME"). It is undisputed that BME is a separate entity, created by persons unaffiliated with JPI, and it obtained its regional franchise from JPI. BME makes its own hiring and firing decisions without control by JPI. BME holds the accounts serviced by Depianti, BME pays Depianti, and BME invoices customers serviced by Depianti. JPI participates in none of this activity. While Depianti, as a franchisee of BME, implements a business model established by JPI, Depianti's performance of cleaning services is not controlled by JPI, which is not a party to the agreement between BME and Depianti.[10] Although JPI is a third-party beneficiary to that agreement, and it had the ability to enforce the contract between BME and Depianti to protect the franchise branding and its interest as a third-party beneficiary, it was not obligated to pay Depianti, and its status as a third-party beneficiary and national franchisor did not make it a party to that agreement in the sense of having control over Depianti's work.[11] Thus, at least with respect to JPI, it has shown that Depianti was sufficiently free from control as to satisfy the first element of the MICS analysis.

(b) *Service performed outside the usual course of the employer's business.* JPI must also show that the service Depianti performed was outside the usual course of JPI's business. Based on the particular factual scenario here, we conclude that this burden was met.

The record shows that JPI's usual business was establishing a trademark and cleaning system that was then licensed to regional franchisees like BME, which then licensed rights to employ the JPI system to serve customer accounts provided by BME. Depianti argues that marketing language on JPI's website and recitals in its master franchise agreement to the effect that it was in the business of operating commercial cleaning businesses demands a finding that, like him, JPI's usual business was providing cleaning services. Nevertheless, these labels do not overcome the facts shown by JPI — that its usual course of business was not to compete with unit franchisees for cleaning contracts. Instead, JPI created a business model that it licensed to regional franchisees, who later marketed the business model and customer accounts to unit franchisees such

---

[10] Cf. *Juarez v. Jani-King of California, Inc.*, No. 09-3495 at *10 (IV) (E) (1) (N.D. Cal. Mar. 4, 2011) (order granting motion to file counterclaim and finding lack of control despite franchise structure).

[11] See, e.g., *Motorsport Engineering v. Maserati SPA*, 316 F3d 26, 29 (1st Cir. 2002) (interpreting contract governed by Massachusetts law and noting the difference between a third-party beneficiary and a party to the contract).

as Depianti. We recognize that the franchise model inherently involves some overlap between the business model created by the master franchisor and the ultimate business run by the unit franchisee.[12] But here, JPI did not market cleaning services to clients, it did not invoice clients for cleaning services, it did not collect payment from clients for cleaning services, and it did not pay Depianti for any services. Thus, at least with respect to JPI, a nation-wide master franchisor, the service provided by Depianti was not in the same scope of business conducted by JPI.[13]

(c) *Worker is customarily engaged in an independently established occupation or business*. With respect to the final criterion, we must

> consider whether the service in question could be viewed as an independent trade or business because the worker is capable of performing the service to anyone wishing to avail themselves of the services or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services.[14]

The ultimate question is "whether the worker is wearing the hat of an employee of the employing company, or is wearing the hat of his own independent enterprise."[15]

Here, for essentially the same reasons that JPI has demonstrated factors one and two, the third factor is also satisfied. The nature of the three-layer franchise arrangement necessarily means that JPI and Depianti are engaged in operating independent businesses. Depianti's unit franchise agreement allows him to expand his operation and perform work for several clients, although the accounts would remain BME's property. Indeed, were the comparison between BME and Depianti, we might conclude that Depianti "wears BME's hat," because under the unit franchise agreement, BME holds the customer accounts, invoices customers, receives customer payments, and even provides backup employees in the event that an emergency prevents Depianti from providing cleaning service to a client. But with respect to JPI, Depianti is not an employee because his business remains separate from JPI's opera-

---

[12] See, e.g., *Awuah v. Coverall North America*, 707 FSupp.2d 80, 83 (III) (A) (D. Mass. 2010) (concluding that cleaning services were performed in the usual course of franchisor/employer's business because the franchisor/employer itself held the accounts and marketed and sold the very cleaning services provided by its immediate franchisee/employee).

[13] Compare id.

[14] *Athol Daily News*, 439 Mass. at 181 (3) (c).

[15] (Punctuation omitted.) Id.

tions. JPI is not a party to the unit franchise agreement, and thus, JPI does not limit or control the scope of Depianti's services or the continuation of his business.

Further, Depianti invested capital and established a business to provide cleaning services in a relationship with BME, and JPI operates the separate master-franchising business. While Depianti's business model and branding was developed by JPI, Depianti has established a business separate from JPI, and Depianti operates that business without intervention by JPI. JPI's status as the national franchisor does not change this result because JPI is not a party to the unit franchise agreements; JPI does not pay unit franchisees; and JPI does not control the unit franchisees' work, clients, or accounts.

Finally, we note that in Depianti's appellate brief, even as he makes forceful arguments to the contrary, he concedes that "[i]f he did not perform any services for [JPI], then [JPI] is not his employer." For this basic reason, we conclude that JPI is not Depianti's employer with respect to the MICS based on the record before us. The trial court erred by ruling otherwise, and its order denying summary judgment to JPI and granting summary judgment to Depianti is reversed.

*Judgment reversed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED JUNE 23, 2011 — ■■■■■■■■

*Kilpatrick, Townsend & Stockton, Betsy C. Neal, Stephen E. Hudson*, for appellant.

*Janet E. Hill*, for appellee.